## In re ALLENDORF.

### (District Court, N. D. Iowa, E. D.   May 14, 1904.)

### No. 327.

**1. BANKRUPTCY—DISCHARGE—GROUNDS FOR REFUSAL.**

Where it appeared that a bankrupt who had been in business as a retail merchant but a short time conducted his business in a somewhat careless manner, and also that his stock had been damaged by fire, and a fire sale held, the mere fact that the value of the stock, as appraised by his trustee, was not as great as it apparently should have been, estimated by deducting the amount of sales from the invoice prices, or that the amount of cash paid out, as shown by his check stubs, was short of the amount taken in from sales, is not sufficient, alone, and against his denial, to justify the refusal of his discharge on the ground that he concealed property and money from his trustee.

**2. SAME—FAILURE TO KEEP BOOKS.**

To warrant the withholding of a discharge for failure of the bankrupt to keep books or records, or for his destruction of them, it must be shown that such failure or destruction was with intent to conceal his financial condition.

**3. SAME—OBTAINING CREDIT BY FALSE STATEMENT.**

The omission by a bankrupt to state an item of indebtedness in a statement made at the request of a wholesale house to which he had previously sent an order for goods cannot be considered as rendering it a materially false statement, made for the purpose of obtaining other goods, which were not ordered until eight months thereafter—the goods ordered at the time having been paid for in the meantime—so as to defeat the right to a discharge under Bankr. Act, § 14b, cl. 3, as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411].

In Bankruptcy. On petition for discharge, and specifications of objection thereto.

Mears & Lovejoy, for bankrupt.
Gates & Leffring and C. D. Kern, for opposing creditors.

REED, District Judge. Henry Allendorf was adjudged a bankrupt, by this court, upon his own petition, June 17, 1903. On November 16th following he filed a petition for discharge, and certain of his creditors in due time thereafter filed specifications of objections in opposition thereto, upon the grounds, in substance, that the bankrupt had, (1) while a bankrupt, knowingly and fraudulently concealed from his trustee property belonging to his estate in bankruptcy; (2) with intent to conceal his financial condition, destroyed or failed to keep books of account or records from which such condition might be ascertained; (3) obtained property from one of the objecting creditors upon a materially

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 752.

false statement in writing made to such creditor for the purpose of obtaining such property.

1. The bankrupt was a retail merchant doing business at Waterloo, in Blackhawk county; and in support of the first of the specifications it is urged that the testimony shows that he has failed to account for, or turn over to his trustee, a considerable portion of his stock of goods, and all of the money received from sales of goods and other sources from some time in January, 1903, to the time he was adjudged a bankrupt. The alleged failure to account for or turn over all of his stock of goods is based upon the ground that the estimated value made by the trustee of the goods coming to his possession is some $2,500 less than the difference between the original cost thereof, as shown by the invoices or bills of the same, and the purchase price of others, and the amount of bankrupt's sales from such stock during such time. The evidence fails to show the basis upon which the trustee made his estimate of the value of the stock, and does show that in the latter part of December, 1902, the stock was largely damaged by fire, for which damage the bankrupt received some $3,300 insurance thereon. In January following the bankrupt conducted or held for several days what he calls a "fire sale," at which his goods were sold in many instances below cost. He also claims that the amount of insurance received by him did not cover the full damage to the stock by fire. It also appears that after the fire some new goods were added to the stock; also a secondhand stock purchased by the bankrupt from a Mr. Billings, for which he was to pay $2,800, and upon which he did pay $1,500 in cash. In this transaction with Billings the bankrupt claims that he was greatly deceived in the value of these goods; that in fact they were not worth to exceed $600. Some litigation grew out of this transaction, and Billings replevied some of the goods, and the matter was adjusted in some way—by the bankrupt paying to Billings something more—and the bankrupt says, "I paid Billings some $1,725, altogether, and did not get $200 out of it." It seems to be admitted that there is a discrepancy between the estimated value of the stock by the trustee, and its value as shown by the invoice of its purchase and the amount paid Billings, less the sales therefrom. It is quite apparent that there might and probably would be a wide difference in the estimated value of such a stock. The bankrupt explains that the apparent discrepancy in values is because of the damage to the stock by fire, and of sales at less than cost during the continuance of his "fire sale." No accurate computations are made in regard to these shrinkages, nor could there well be. The alleged concealment of money is made to appear by taking the gross amount of cash received from sales of goods and other sources from early in January, 1903, the most of which was deposited in bank, and deducting therefrom the checks drawn against such deposits, as shown by the stubs of such checks. Upon this basis there appears to be a shortage of something over $1,000. The bankrupt, however, says that some of the checks made by him upon the bank are not shown upon the stubs, and the checks themselves were not preserved. The testimony seems to sustain this view. The bankbooks do not show the different checks, but only the gross amount returned at time of balancing the books. The bankrupt also says that payments of expenses and some

other items were made from the store, and did not pass through the bank. Estimating all of these amounts that he could, there appears to be about $500 still unaccounted for. At the time of his examination in July, 1903, at the first meeting of the creditors (and this is the testimony upon which the creditors mainly rely upon this hearing), the bankrupt was 34 years old; had a family, consisting of his wife and two small children, which were supported from this business. He had never conducted a business prior to beginning this, which was in November, 1901, but had been a clerk in different establishments, at salaries varying from $15 to $20 a week. It is very apparent that he is not or was not a careful business man; that this business was conducted in a loose and careless manner; and it is a fair inference from all the testimony that whatever shortage there may be in the value of his stock, or money received in the course of business, is due largely to this and the damage caused by fire, and not to a fraudulent concealment by the bankrupt from the trustee of any of his property. The bankrupt positively denies that he has concealed or withheld any of his property not exempt from execution from the trustee, and it is not made to appear that he had any of it in possession or under his control at the time of his examination, or the taking of the testimony upon this hearing. It cannot, therefore, be said, from the testimony submitted in support of this specification, that he has willfully and knowingly sworn falsely, or has fraudulently concealed from the trustee any money or other property belonging to his estate in bankruptcy.

2. To warrant the withholding of a discharge for a failure of the bankrupt to keep books or records, or for his destruction of them, such failure or destruction must be with intent to conceal his financial condition. This bankrupt did not fail entirely to keep books. He kept a cashbook, showing the amount received from the daily sales of goods and from other sources, and most of the payments for goods, expenses, and other matters; also a bankbook, and the original invoices or bills of goods purchased. He kept no daybook, blotter, or ledger. The testimony shows that the clerks or salesmen were furnished small salesbooks, made of thin sheets of paper, arranged to fold or double over a piece of carbon paper. Upon a sheet so folded, the article sold and the price were entered, and in doing this a copy was made at the same time by means of the carbon paper. The sheet or slip was then torn off, and sent with the amount of the purchase to the cashier; the salesman retaining the copy. At the close of the day the amounts from these various slips were ascertained and entered upon the cashbook, and the slip destroyed soon after. The specification of the destruction of books or records is based upon the destruction of these slips. There is no testimony from which it can be found that the failure to keep a more complete set of books, or that the destruction of these slips, was with intent to conceal the financial condition of this bankrupt; and, in the absence of such testimony, it cannot be so held.

3. Did the bankrupt make a materially false statement in writing to one of the objecting creditors for the purpose of obtaining property from such creditor? It appears that some time prior to September 9, 1902, the bankrupt wrote to one of the objecting creditors, requesting it (a copartnership) to send him a bill of goods on credit. The amount

is not shown. Before sending the goods, the creditor requested of the bankrupt a statement of his financial condition. In response to this request the bankrupt on September 9th wrote the creditor as follows:

"Waterloo, Iowa, Sept. 9th, 1902.

"Messrs. Lindeke, Warner & Schurmeier, St. Paul, Minn.—Gentlemen: Enclosed please find statement of my standing as near correct as I can remember.

"Now the reason that I am behind in my payments, I had to put in a heavier stock than I intended on account of the competition in this city, and I suppose I bought of too many people which I am not doing this fall. My sales have increased every month since in business, and if they continue to do so I will not owe a cent by Jan. 1st. If you consider my credit good enough to ship my order I would first like to ask you to cancel the Wool Dress Goods, as I have all I can use in that line.

"Hoping to hear from you favorably, I am,

"Yours Truly.                                    Henry Allendorf."

The statement inclosed in this letter is upon a printed blank addressed to, and apparently furnished by, the creditor, and is as follows:

"Gentlemen, the following is a correct statement of our financial condition on Sept. 9, '02:

Assets.

| | |
|---|---:|
| Stock of merchandise | $ 5,000 |
| Cash on hand and in bank | 50 |
| Store furniture and fixtures | 400 |
| Total assets | $ 5,450 |
| Insurance on stock | $ 3,500 |
| Annual sales | 12,000 |

Liabilities.

| | |
|---|---:|
| Bank indebtedness | $    200 |
| Money borrowed from friends and relatives | |
| Other borrowed money | |
| Mortgages | |
| Merchandise indebtedness. | |
| [Names and amounts stated] Total | 1,041 |
| Other small bills, about | 250 |
| Total | $ 1,491 |

"[Signed]                                    Henry Allendorf."

At the date of this statement the bankrupt was owing his wife's mother and another lady some $800 or $900, and this amount and about $375 owing to another creditor are not stated in the list of his liabilities. Upon receipt of this letter and this statement, the creditor shipped to the bankrupt the goods ordered. The testimony of the bankrupt shows that the credit so obtained was afterwards settled and paid by him in January or February following. Afterwards, and on May 15, 1903, the bankrupt ordered by letter from this creditor a bill of goods amounting to $63.39, and on May 20th, another order amounting to $32.50, both of which were filled, and the goods soon after shipped to the bankrupt. The creditman of this creditor testifies that the order of May 15th was the first the firm had received from the bankrupt for several months, and that before approving it he looked up their information on Allendorf, and read his statement of September 9, 1902, and,

on the strength of that, approved the order and shipped the goods, and that the order of May 20th, was also approved and the goods shipped on the strength of such statement. Conceding, without so deciding, that a materially false statement made prior to the amendment of February 5, 1903, to the bankruptcy law (chapter 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 409]), may be shown, to defeat a discharge in proceedings commenced since that amendment, do the facts shown sustain this specification? That the omission by the bankrupt from this statement of the amounts owing by him to his relatives and to the other creditor, if knowingly or purposely done, would be a material false statement, may be conceded. Does it, however, fairly appear that such statement was made for the purpose of obtaining the goods ordered May 15th and 20th, respectively? The statement was made at the request of the creditor, when it received the order for goods, some time prior to September 9, 1902, and to induce it to fill that order. There is nothing in the statement, nor in the letter of the bankrupt inclosing it to the creditor, to show that it was to be a continuing statement or representation of the bankrupt's financial standing—in fact, the statement is expressly limited to his condition on September 9, 1902—and the testimony of the creditman of this creditor and the letter of the bankrupt conclusively show that it was made to secure the bill of goods prior to September 9th only. Between that date and May 15th following (more than eight months) there was no dealing between these parties, and there is no evidence from which it can be fairly inferred that the statement was made for the purpose of obtaining the goods shipped upon the orders of May 15th and May 20th. To defeat a discharge, the bankrupt must have obtained property upon a materially false statement made in writing for the purpose of obtaining such property. The statement in question was not made for the purpose of obtaining the property shipped to the bankrupt by this creditor on May 15th and 20th, respectively, nor any other property for which he is now owing.

It follows that the specifications of objection in opposition to the discharge are not sustained by the evidence, and the discharge must be granted, and it is so ordered.