## In re DRESSER & CO.

### (District Court, S. D. New York. February 24, 1905.)

1. BANKRUPTCY—DISCHARGE—OBTAINING CREDIT BY FALSE STATEMENTS.

   The effect of false statements made by a bankrupt to obtain credit, as barring his right to a discharge under Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684], is not different because the credit was obtained by a corporation of which the bankrupt owned a majority of the stock.

2. SAME—EFFECT OF AMENDMENT OF STATUTE.

   The provision of Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 797 [U. S. Comp. St. 1901, p. 3428], introduced by amendment in Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684],

making the obtaining of property on credit upon a materially false statement in writing ground for refusing a discharge to a bankrupt, applies to all cases where application for discharge was made after the amendment took effect, although the false statements may have been made before.

In Bankruptcy. On review of a decision of a referee.
See 135 Fed. 495.

Robert D. Murray, for objecting creditors.
Morris J. Hirsch (Herbert H. Maass and Charles Grossman, of counsel), for bankrupts.

HOLT, District Judge. The questions involved in this case are novel and difficult, but I consider it unnecessary to discuss them. I concur entirely with the conclusions of the referee, in respect to the effect of both the written statement of assets and the refusal to testify, and with the grounds for his conclusions, as stated in his very full and thorough report. I will simply add that, in my opinion, even if no part of the proceeds of the sale of the acceptances had been remitted by the American Tubing & Webbing Company to Dresser & Co., the bankrupt Dresser had such an interest in the American Tubing & Webbing Company, as owner of two-thirds of its stock, that he would be held, within all the authorities, to have obtained the money paid to the American Tubing & Webbing Company, even if the theory upon which the bankrupt's counsel based his arguments, that as between the American Tubing & Webbing Company and the banks which bought the paper, the American Tubing & Webbing Company was the sole vendor of presumably business paper, and the brokers, Wheeler & Jones, who negotiated the sale, were the agents of the American Tubing & Webbing Company only, should be substantially admitted. The benefit which the bankrupt would be presumed to have derived from the payment of the money to the corporation, of which he was the principal stockholder, would, I think, have made it a case of his obtaining the money on the credit of the written statement, within the meaning of all the cases construing the statutes creating a criminal or civil responsibility for obtaining money by fraud. But, in fact, as is well demonstrated by Mr. Dexter in his report, the American Tubing & Webbing Company and Dresser & Co. were jointly obtaining money on drafts, made by them to be sold, on which they were jointly liable. They were both principals, engaged in a common enterprise for the benefit of each, and Wheeler & Jones were the agents of both. If any distinction is to be made between Dresser & Co. and the American Tubing & Webbing Company, I think that Dresser & Co. were the more responsible principals in the transaction. They were primarily liable on the acceptances; the paper was sold more especially upon their credit, caused by Dresser's statements of his firm's condition, and they received the greater part of the proceeds.

I think there is nothing in the point that the statement was made before the amendment of the bankruptcy act, in 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 682]), went into effect. A discharge in bankruptcy is an act of grace, and Congress can

impose such conditions upon granting a discharge as it sees fit. There is nothing analogous between a law preventing a discharge because of an act done before the law was passed and an ex post facto law.

My conclusion is that the referee's report should be confirmed, and the discharge of the bankrupt Dresser denied.