## In re PINCUS et al.

(District Court, S. D. New York. September 4, 1906.)

1. BANKRUPTCY—PETITION FOR DISCHARGE—PLACE OF FILING.

Under District Court rule 11 in bankruptcy in the Southern District of New York, which makes the office of the referee the office of the court, the filing of a petition for discharge with the referee is sufficient.

2. SAME—DISCHARGE—OBTAINING CREDIT BY FALSE STATEMENT.

A written financial statement made by a business firm to a commercial agency, reciting that it is made as a basis for credit with the associate members of such agency, and which is communicated to members, who extend credit on the faith of it, is equivalent to one made directly to them, and, if materially false, will debar the debtor firm from the right to a discharge in bankruptcy under Bankr. Act 1898, § 14b (3), as amended in 1903 (32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 681]).

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 760.]

3. SAME—PARTNERS—ADJUDICATION AGAINST PARTNERSHIP ONLY.

Individual partners cannot be discharged from partnership debts under an adjudication against the partnership only.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 778.]

In Bankruptcy.  On objections to petition for discharge.

R. A. Mansfield Hobbs, for objecting creditors.
Harry R. Kohn, for bankrupts.

HOUGH, District Judge.  These bankrupts filed with the referee in charge, and about five months after adjudication, the petition under review.  No action by the court was taken thereon, until more than a year after adjudication, and the objecting creditors now contend that the filing with the referee was insufficient to confer jurisdiction, and the petition should be dismissed as not having been preferred within the statutory year.  It is true that the referee "as referee" has no power to consider the petition.  Collier on Bank. (5th Ed.) p. 171.  But within this district, and by force of district rule 11 in bankruptcy, the office of the referee is the office of the court.  The objection is overruled.

On and prior to July 1, 1903, the bankrupts were trading under the firm name of "Castle Manufacturing Company."  The petition in involuntary proceedings which brought them into this court runs against the bankrupts as partners only.  The prayer of the petition is that the "firm of Castle Manufacturing Company" be adjudged bankrupt, and the adjudication declares that the petitioners "doing business under the firm name of Castle Manufacturing Company are declared bankrupts accordingly."  This is therefore a proceeding against a partnership under the authority of section 5 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547, 548 [U. S. Comp. St. 1901, p. 3424]).  On or about July 1, 1903, a statement of the financial condition of this firm was prepared, which the special commissioner reports as true when prepared.  I concur in his finding of fact.

On and before July 1, 1903, a large part of the assets of the firm consisted of a loan made to it by Bernstein, one of the partners.  Inasmuch as the partner's right to repayment was subordinate to the claims of creditors of the partnership, this advance (consisting of $10,000) was rightly treated in the statement above referred to (as well as in preceding statements) as an asset.  On the 3d of August, 1903, Bernstein's loan to the firm became, by an instrument of transfer in which all of the petitioners joined, the loan of an outsider (i. e., of Bernstein's uncle), and the asset of $10,000 immediately became a liability for the same amount, ranking with the demands of persons who sold goods to the partnership, and a claim for the same has been proved herein by the assignee.

The Credit Clearing House is a mercantile agency, having for its object, inter alia, the collection of information regarding mercantile establishments for the guidance of its subscribers, who are known as "associate members."  On or about July 11, 1903, the bankrupt firm furnished to the Credit Clearing House the correct statement of their assets and liabilities as made up on or about July 1st.  This statement is extremely definite, is in effect a brief trial balance, and was compiled with the assistance of an expert accountant.

At the foot of this very definite statement is appended the following:

"The above is a full and correct statement of our financial condition and is made to form a basis for credit with the associate members of the Credit Clearing House.

"[Signed]     .     Castle Manufacturing Company,
    "By Albert Bernstein, Member of Firm."

On November 12, 1903, the firm furnished to one of the objecting creditors a statement identical in figures with the one given in July to the Credit Clearing House, and, indeed, from July, 1903, down to the time of failure, this statement appears to have been available to any creditor or merchant who chose to inquire for it. At the foot of this last-mentioned copy of the statement is appended the following:

"The above is a full and correct statement of our financial condition on the first day of July 1903, and is made to form a basis for credit with Sherman, Reid & Company.

"[Signed]      Castle Manufacturing Co., by Albert Bernstein.
"Date, New York, Nov. 12, 1903."

This last statement was furnished to a Mr. Chaffee, of the firm named. His firm was an associate member of the Credit Clearing House. He had had prior to July 1, 1903, a series of reports from the bankrupt firm, and in those earlier reports definite statements had been made regarding Bernstein's loan "at the risk of the business," which formed so large a part of the bankrupts' assets, and he knew that the firm reported to the "Clearing House." In December, 1903, therefore, he called upon the manager of the Credit Clearing House, a Mr. Wheeler, and inquired whether a statement regarding this loan appeared upon the last report made by the bankrupts. Wheeler said it did not. Chaffee asked him to go and find out about the matter. Thereupon, in the latter part of December, Wheeler called upon Bernstein with the report of July 11th, and asked regarding the loan. Bernstein took from Chaffee the original signed statement of July 11th and wrote upon it (and above his firm signature at the foot thereof) the following words:

"The additional loan of $10,000 is included in above amount and has been renewed."

Wheeler communicated the result of this visit to Chaffee; and Sherman, Reid & Co. thereupon sold goods to the bankrupts, the price of which constitutes a provable debt that has never been paid; and the evidence here is that such sales were made upon the faith both of the mercantile agency report and of the statement dated November 12, 1903.

Upon these facts it is asserted that discharge should not be granted because of the material falsity, within the meaning of section 14b (3) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684]), of (1) the statement made to the Credit Clearing House in December, 1903, by addendum to the report of July 11, 1903, and (2) the statement made to Sherman, Reid & Co. on November 12, 1903.

On August 3, 1903, the statement of July 1st became ancient history, and any further use of it as a basis for credit, dishonest. If on November 12th deceptive oral representations had been made by the petitioners in response to natural inquiries regarding the Bernstein loan, questions would be raised that need not be here discussed. Nothing happened on November 12th which could justify Sherman, Reid & Co. in regarding the instrument as anything but what it literally purported to be—a statement true on July 1st. If the creditors chose to make no contemporaneous inquiry, while candidly admitting that the divergence of dates was noticed, it must be inferred that they regarded the partnership condition in July as a basis for credit in November. Another creditor (Simpson's Sons & Co.) received in January, 1904, from the bankrupts another copy of the statement of July 1st. They likewise seem to have been content to get a report purporting on its face to be six months' old, to make no inquiry, and accept it as a basis for January sales. All objections based on transactions other than the statement of December, 1903, to Wheeler of the Credit Clearing House are overruled.

That Bernstein's statement of December, made in response to Wheeler's inquiry, was materially false, is scarcely denied. The assertion that the loan was "included" in the statement, having been "renewed," was equivalent to declaring that the loan was in the same condition as on July 1st, a statement grossly false. But it is urged, and has been found by the commissioner, that an objection to discharge cannot be based on this falsehood because it was told to a commercial agency, for which In re Allendorf, 12 Am. Bankr. Rep. 320, 129 Fed. 981, and In re Dresser, 13 Am. Bankr. Rep. 616, 144 Fed. 318, are cited. The latter decision has been affirmed in the Circuit Court of Appeals (May 22, 1906) 146 Fed. 383.

In my opinion neither of the decisions referred to, and still less the judgment of the Court of Appeals, affords any ground for the contention now made. The amendment of 1903 certainly intended to make of a commercial agency neither a fetish nor a sanctuary for liars, nor to grant immunity from the consequences of false statements, provided they were contained only in reports to commercial agencies. Each instance must be decided on its own facts. This bankrupt firm made in effect a false statement to every associate member of the Credit Clearing House to whom the falsehood delivered to Wheeler was communicated. The firm made the "Clearing House" its duly authorized agent to circulate that falsehood, and when Wheeler correctly communicated it to Chaffee he brought this case directly within the ruling of the Circuit Court of Appeals. In re Dresser, supra. I think this follows from the agreement that the statement originally made July 11th was to be used as a "basis for credit" with all members of the agency. What would be the result were these words omitted need not now be decided.

The application of the above findings to the present petitioners requires further consideration.

The petition for discharge was filed by all the three partners in the Castle Manufacturing Company, and prays for discharge not only

from the liabilities of the firm, but from individual debts. Bernstein apparently abandoned the proceeding, and Pincus and Salzberger obtained leave to prosecute it; the order granting such leave, however, declaring no finding as to the effect of Bernstein's conduct. The latter has left the jurisdiction, and has never been examined under the objections filed against the firm. In a proceeding of this kind under section 5, the partnership is declared "a legal entity, irrespective of the status or the separate rights of the individual copartners." In re Stein & Co., 127 Fed. 549, 62 C. C. A. 272. Individual discharges cannot be granted under an adjudication against the partnership only. In re Hale, 6 Am. Bankr. Rep. 35, 107 Fed. 432. Although an adjudication of the partners as individuals may be entered in an involuntary proceeding against the partnership entity only, and individual discharges thereafter obtained. In re Meyer, 98 Fed. 979, 39 C. C. A. 368.

No steps having been taken in this matter by or against the partners as individuals, the only thing adjudicated was the partnership entity, and the only thing dischargeable is the same entity; i. e., the "Castle Manufacturing Company." All or any number of the partners may petition for the partnership discharge. This proceeding in its present form is in legal effect the petition of two partners for the release of their firm from its debts. That firm having, as above shown, violated section 14b (3) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427] as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684]), is not entitled to discharge. In Re Dresser, supra, a discharge was granted to the junior partner in Dresser & Co., while refused to the senior. The bankrupts in that case had been duly adjudicated, both individually and as partners. The proceeding was therefore within the construction of the act given by In re Meyer, supra.

These petitioners have evidently hoped to show themselves innocent of complicity with the absent Bernstein in making the false statement above discussed, and thereupon to obtain release from partnership debts while leaving Bernstein responsible. To grant this relief without bringing their individual property and individual creditors into this proceeding is not only without statutory authority, but clearly wrong. The right to proceed in bankruptcy against a partnership as a "legal entity" is new, and before the act of 1898 unheard of. The proceeding may be extended even through individual action of a partner, so that the rights and liabilities of separate partners may be considered. even in opposition to those of his copartners. But, until the partnership entity is thus resolved, the court can and should deal with the partners only in the way they have been proceeded against—in the aggregate.

No finding is made either as to the court's present power to amend this adjudication, or the right of Pincus and Salzberger, or either of them, to obtain a discharge (should such amendment be granted) under the facts proven herein. This record is insufficient to present either question.

Discharge denied.