HARDIE v. SWAFFORD BROS. DRY GOODS CO.

(Circuit Court of Appeals, Fifth Circuit. December 1, 1908.)

No. 1,620.

1. BANKRUPTCY (§ 414*)—CONSTRUCTION OF BANKRUPTCY ACT—RIGHT OF BANKRUPTCY TO DISCHARGE.

One of the main objects, if not the most important, of Bankr. Act July 1, 1898, c. 541, § 1, 30 Stat. 544 (U. S. Comp. St. 1901. p. 3418), is to release the honest but insolvent debtor from the burden of his debts, in the interest of his family and the general public, and the burden rests upon one opposing a bankrupt's discharge to bring the case clearly within some one of the exceptions enumerated in the act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 720; Dec. Dig. § 414.*]

2. BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSAL OF DISCHARGE—FALSE STATEMENTS BY PARTNER.

A materially false statement in writing made by a partner in the ordinary course of business of the partnership in buying merchandise for the purpose of obtaining goods on credit, and by means of which they were so obtained by the firm, is not ground for refusing a discharge in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 14b. cl. 3, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026), to another partner who did not participate in the wrongful act and had no knowledge of it.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

Shelby, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Texas.

For opinion below, see 143 Fed. 607.

Mason Williams, for appellant.

M. L. Crawford, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is an appeal from a judgment in bankruptcy refusing a discharge. The facts of the case are undisputed and as follows:

On May 15, 1905, the firm of A. F. Hardie & Co. and the individual members thereof, to wit, Alva Finley Hardie, his son, James Mallory Hardie, and Max Kaliski, were, upon the petition of creditors, adjudged bankrupt. An application of discharge was filed by the members of the firm on the 27th of October following. Opposition to the discharge having been filed by the Swafford Bros. Dry Goods Company, two of the partners, A. F. Hardie and Kaliski, withdrew their prayer for discharge, leaving the application to stand in behalf of J. M. Hardie alone. The principal ground of opposition urged by the Swafford Bros. Dry Goods Company was the following:

"That on, to wit, the 13th day of February, 1905, the said firm made and delivered to the said Swafford Bros. Dry Goods Company a statement in writing, materially false, respecting the condition of the business of the said firm. By the said statement it appears that the said firm had assets of the value of $115,116. Said statement further shows that the said A. F. Hardie had, in real

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

estate and real estate notes, $60,000. The said Swafford Bros. Dry Goods Company shows that the said statement was absolutely false, in this: that the said A. F. Hardie did not have real estate or real estate notes of the value of $60,000, or anything approximating that amount; that the value of the assets of the firm did not exceed $60,000, and that the liabilities of the said firm were approximately $100,000; that while the said statement shows the firm to be worth, over and above all liabilities, the sum of $90,000, still, in truth and in fact, the said firm was then insolvent. The said statement was made by the said firm to the Swafford Bros. Dry Goods Company for the purpose of inducing the said Swafford Bros. to sell to the said A. F. Hardie & Co. goods, wares, and merchandise on credit, and that they relied upon the truth of the said statement and did sell to the said A. F. Hardie & Co. goods, wares, and merchandise, aggregating the sum of $1,500 and upward, which said goods, wares and merchandise have never been paid for."

After taking proofs, the referee found the facts substantially as set forth in the specification of opposition referred to, and made this additional finding:

"I find that said statement was made by Alva Finley Hardie, and without the knowledge of said James Mallory Hardie; but at that time James Mallory Hardie was a member of the aforesaid partnership, and bound by its statements issued as aforesaid."

It is clearly shown by the record that, after A. F. Hardie made the statement, the Swafford Bros. Dry Goods Company shipped merchandise to the firm of A. F. Hardie & Co. at San Antonio, amounting in value to about $1,300, and that the merchandise was received by the firm and commingled with the stock on hand.

The matter to be decided upon this appeal is correctly stated by the trial judge as follows:

"The only question of law to be determined is whether the fraud thus committed by A. F. Hardie may be interposed as a bar to the discharge of J. M. Hardie, who, it is conceded, did not participate in the wrongful act and had no knowledge of its perpetration."

The trial judge in his opinion, found in the record, cites Parsons on Part. (3d Ed.) 163; Story on Part. 166; Collier on Part. §§ 445, 447; and Strang v. Bradner, 114 U. S. 561, 562, 5 Sup. Ct. 1038, 29 L. Ed. 248, and cases there cited, all to the effect, as summed up in Strang v. Bradner, that each partner is the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the course of the partnership business and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility upon the ground that such misrepresentations were without their knowledge. The trial judge then proceeds to say as follows:

"While the cases cited do not decide the very question involved in the present controversy, they nevertheless distinctly hold that a fraud committed by one partner in the course of the partnership business renders the firm pecuniarily liable to the aggrieved party for the wrongful act of the offending member. In the case before the court, it is shown by the record that A. F. Hardie was the financial agent of the firm and one of its buyers; that the false statement was made by him in the course of the partnership business, and for the benefit of the firm, and that the firm actually received and appropriated the fruits of the fraudulent transaction. If so, under the facts

stated, the law would impute the fraud of the delinquent partner to inno-
cent members of the partnership to the extent of imposing upon the firm a
pecuniary liability, no sound reason is perceived why the principle should not
be applied to the present proceeding by refusing a discharge to a member
not assenting to the fraud. The court is of the opinion that the principle is
applicable to both cases, and hence, that the prayer of J. M. Hardie for a dis-
charge should be denied."

The authorities cited above are indisputably correct as to the prop-
ositions declared, but we doubt if they should be permitted to con-
trol the case. So far as they go, the liability of the innocent partner
for the torts of the wicked partner committed within the scope of the
partnership is based on the application of the principles of agency,
and is restricted to pecuniary liability alone. In this country, since the
abolition of imprisonment for debt, the punishment of the innocent
principal or the innocent partner for the wrong committed by the
agent or partner has not been pushed further than to affect business
reputation and to impose pecuniary liability. It is said that the dis-
charge of a bankrupt under the present bankruptcy law is an act of
grace, merely incidental to the general purpose, and in fact could be
refused entirely; and it is argued from this that the provisions of the
law relating to the discharge of bankrupts should be construed
against the bankrupt, and all implications and doubts should be re-
solved against him.

Since the days of Queen Anne (4 & 5 Anne, c. 17, § 19) the dis-
charge of the prima facie honest bankrupt and his future estate and
effects has been provided for in every bankruptcy law; at first with
many restrictions, even requiring the consent of creditors; and it is
provided in our last act that the bankrupt, whether voluntary or in-
voluntary, applying for a discharge, shall receive it, unless—

"he has (1) committed an offense punishable by imprisonment as herein pro-
vided; or (2) with intent to conceal his financial condition destroyed, conceal-
ed, or failed to keep books of account or records from which such condition
might be ascertained; or (3) obtained property on credit from any person up-
on a materially false statement in writing made to such person for the purpose
of obtaining such property on credit; or (4) at any time subsequent to the first
day of the four months immediately preceding the filing of the petition trans-
ferred, removed, destroyed, or concealed, or permitted to be removed, destroy-
ed or concealed any of his property with intent to hinder, delay or defraud his
creditors; or (5) in voluntary proceedings been granted a discharge in bank-
ruptcy within six years; or (6) in the course of the proceedings in bankruptcy
refused to obey any lawful order of or to answer any material question ap-
proved by the court."

All of these exceptions, except the fifth, are based on criminal con-
duct, or actual dishonesty quasi criminal in nature, and this great ad-
vance from the early days when insolvency was treated as a crime
goes to show that the discharge of the honest bankrupt is favored,
and the opposition to a discharge under the present law is burdened
with the necessity of bringing the inculpatory facts alleged strictly
within the exceptions enumerated in the law.

Originally, in bankrupt laws, the discharge of the bankrupt may
have been incidental, and the main purpose the equal distribution of
his goods among creditors; but to say it now, and of the present law,
we must shut our eyes to the actual practice in our courts. In nearly

all and every voluntary bankruptcy brought under the present law
the administration or distribution of the bankrupt's property has been
practically concluded before filing petition, and the sole object of the
petitioner is to be relieved of his debts, and in number the voluntary
cases are about four to one of the involuntary.  See Report, Dept.
of Justice, 1907.  And the same may be said of the voluntary cases
under the act of March 2, 1867, c. 176, 14 Stat. 517, which was pass-
ed mainly to relieve the unfortunate debtors ruined by and through the
vicissitudes of the great Civil War.

For these considerations, we are disposed to deny that in the pres-
ent bankruptcy law the discharge of the honest debtor is a mere in-
cident which could have been omitted without impairing its symmetry
and efficiency; and, on the contrary, to assert that the release of the
honest, unfortunate, and insolvent debtor from the burden of his
debts and restore him to business activity, in the interest of his fam-
ily and the general public, is one of the main, if not the most impor-
tant, objects of the law.

The adjudged cases called to our attention and bearing on the ques-
tion herein, favor a liberal construction of section 14 of the bankrupt-
cy law in the matter of the discharge of honest bankrupts.  Act July
1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427).  In Boyd
v. Arnold Loucheim & Co., 149 Fed. 187, 79 C. C. A. 135, this court
ordered a discharge under circumstances as follows:

"The referee specifies the four grounds of objection that were made by the
creditors to the application for discharge, and distinctly finds that the mis-
take, if any, that was made in the verified schedules, was not made willfully
and fraudulently, nor with the intention of concealing any interests from his
creditors; that the 1,579 acres of land was not transferred to his wife, nor
procured to be transferred to her, for the purpose of defrauding, hindering,
or delaying his creditors; that the indefinite interest which the bankrupt (in
the opinion of the referee) had in the 1,579 acres of land was not willfully and
fraudulently concealed from his trustee; that the $85 referred to in the fourth
objection, which the bankrupt drew from the Boyd Mercantile Company, an-
other bankrupt, and had same charged to his personal account, was not done
by him for the purpose of defeating the bankruptcy act; that the bankrupt
has fully complied with the requirements of Congress and the orders of court
touching his bankruptcy; and that all notices, wherever required, have been
given in the manner and length of time required by the bankruptcy act and
the rules of court.  These findings of the referee, so far as they are disputed
by the appellees, are, in our opinion, amply supported by the testimony."

And see In re Blalock (D. C.) 118 Fed. 679.

In Hyman's Case (D. C.) 97 Fed. 195, the wife was held not to be
liable for the fault of her agent (her husband) in not keeping true
books of account, and to the same effect see In re Meyers (D. C.)
105 Fed. 353.

In Schultz' Case (D. C.) 109 Fed. 264, the innocent partner was held
not to be liable for the neglect of his copartner in not keeping true
books of account.

In re Dresser (D. C.) 13 Am. Bankr. Rep. 637, 144 Fed. 318, is
well reasoned and is directly in point.  The referee reported:

"The bankrupt Riess seems to have had no share in making the later 'short
statement' relied upon by the objecting creditors, and they do not claim that
he was personally concerned in the alleged fraud other than as a partner of
Dresser.  It is true that, on principles of agency, Riess is liable civiliter for

the fraudulent acts of Dresser which were clearly within the scope of the partnership business and for the firm's benefit. Schroeder v. Frey, 60 Hun, 58, 14 N. Y. Supp. 71; Bradner v. Strang, 89 N. Y. 299, affirmed in Strang v. Bradner, 114 U. S. 555, 5 Sup. Ct. 1038, 29 L. Ed. 248.

"The discharge in bankruptcy would not therefore affect a debt so created. The present act specifies, among nondischargeable debts, 'liabilities for obtaining property by false pretenses or false representations.' Act July 1, 1898, c. 541, § 17a, cl. 2, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428).

"But these considerations do not affect the right of an innocent partner to a discharge under section 14b, cl. 3, of the amended bankruptcy act of February 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026. The right to a discharge is distinct from the effect of a discharge. In re McCarty (D. C.) 7 Am. Bankr. Rep. 40, 111 Fed. 151; In re Marshall Paper Co., 4 Am. Bankr. Rep. 468, 102 Fed. 872, 43 C. C. A. 38.

"It was held under the act of 1867, which in section 33 provided that 'no debt created by fraud or embezzlement of the bankrupt shall be discharged,' that 'fraud' as used in that section meant 'positive fraud in fact involving moral turpitude or intentional wrong as does embezzlement, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. Such a construction of the statute is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency. A different construction would be inconsistent with the liberal spirit which pervades the entire bankruptcy system.' Neal v. Scruggs, 95 U. S. 704, 24 L. Ed. 586 (by Mr. Justice Harlan).

"Therefore, although, on principles of agency and partnership, a discharge may not relieve Riess from 'liabilities for obtaining property by false representations' (a question not to be decided here), it is considered that, not having himself participated in the making of the short statement relied on by the banks, the fraud of his partner cannot under these circumstances be imputed to him, and his discharge cannot therefore be refused. Matter of Hyman (D. C.) 3 Am. Bankr. Rep. 169, 97 Fed. 195; Matter of Meyers (D. C.) 5 Am. Bankr. Rep. 4, 105 Fed. 353."

This report and recommendation were confirmed by the court.

As we find no reason in the law (and, certainly, none in business or morals) why an honest bankrupt should not be discharged, we answer the question, stated by the trial judge in this case, in the negative.

It is therefore ordered that the decree of the District Court be reversed, and the decree now rendered here that the petition of James Mallory Hardie for a discharge in bankruptcy be, and the same is hereby, granted.

SHELBY, Circuit Judge (dissenting). After the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3418]) had been in force nearly five years, Congress discovered that section 14 was too liberal in permitting discharges. It was found that the bankrupt could obtain a discharge when it seemed inequitable and unjust for him to have it. There were in the act only two grounds named on which the granting of the discharge could be opposed: When he has (1) committed an offense punishable by imprisonment as herein provided; or (2) when he has, with intent to conceal his true financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained. Section 14b. Clause 1 relates only to criminal offenses, and clause 2 involves intentional wrong. On February 5, 1903, the act was amended by adding four additional grounds upon which the right to a discharge might

be contested. This case involves the construction of the third ground added by the amendment, which provides that the court must discharge the applicant, unless he has (3) "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." Section 14b, as amended (chapter 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1026]). This clause involves no specific intent, nor offense punishable under the act. The court below held that it was applicable to a partnership and to the members thereof, and refused a discharge to a member because the firm, without the knowledge of the applicant, acting by another member, had obtained property on a false written statement, contrary to the terms of the clause. The question, when the principle involved is considered, is whether a person is barred of his discharge by clause 3 when he obtains the property by a materially false statement made by an agent acting within the scope of his authority.

Section 14 is applicable to "any person" who may be adjudged a bankrupt, including corporations and partnerships. Section 1 (19), and sections 4 and 5. Clause 3 of the amendment is therefore, by the words of the act, made applicable to partnerships and corporations. A partnership, by the terms of the act, "during the continuation of the partnership business, or after its dissolution and before final settlement thereof, may be adjudged a bankrupt." Section 5. The partnership is made a separate entity, and, as such, subject to the terms of the act. Under the act before its amendment, a discharge did not release the bankrupt from a debt for property "obtained by false pretenses or false representations." Section 17. The amendment, therefore, was not to prevent a discharge from the liability for property obtained by the materially false statement, and the discharge, neither before nor since the amendment, releases the bankrupt from such liability. But it releases him from his general debts, and it was to prevent this release in the cases covered by the amendment that the several grounds of opposition to the discharge were enacted. The evil and wrong to be corrected by clause 3 was the obtaining property on credit by false written statements. Before its enactment, the bankrupt might add largely to his estate by making false written statements, and yet obtain a discharge as to all of his debts (with the few statutory exceptions), except the debt to the person to whom he made the false representations. The purpose of the amendment was to prevent this, and to deprive the bankrupt who made such statement of his discharge. The evil is the same whether the bankrupt acts himself or by an agent. The creditor loses his property because of his reliance upon a materially false written statement. And it appears to me wrong to permit the bankrupt to take shelter behind his agent's act while he profits by the fraud committed in his name.

The construction placed on the statute by the opinion just read tends, I think, to defeat the purpose of the amendment. Mercantile business is to a large extent conducted by firms and corporations, and, if the doctrine of agency is to have no application in the enforcement of clause 3, the false written statement made to obtain credit can be made without risk as to obtaining the discharge. A firm may

be composed of ten members, and only one, as managing partner, may make the false statement and obtain property for the firm, and nine members may be discharged, although the firm has reaped the benefit of the fraud. And every member can secure his discharge if the firm has an agent, who is not a member thereof, to make a false statement. The assets of the firm being distributed, and it dissolved and out of business, its failure to obtain a discharge as a partnership would not matter to the discharged members. Firm debts are provable debts also against each member as an individual bankrupt, and the partnership debts are discharged, so far as they are individual liabilities, by the discharge of the partner in individual proceedings. 2 Remington on Bankruptcy, § 2796. While a partnership is a separate entity, the substantial thing that makes it is the individual members, and to discharge them is to emasculate clause 3 so far as it is applicable to partnerships. A single person engaged in business may make a materially false statement in writing through his managing clerk or agent, and thereby obtain credit and property. Yet, on the principle announced, he would be entitled to his discharge on his denial of guilty knowledge of the false statement, although he had received the fruits of the fraud, unless his knowledge of his clerk's action could be affirmatively proved—which, in practice, would usually be impossible.

And is clause 3 not to be applied to bankrupt corporations? If so, it can only be done by holding the principal, when he or it applies for a discharge, bound by the materially false written statement made by the agent within the scope of his authority. If the idea is to prevail that the discharge is not to be barred by the false written statement made by an agent acting within the scope of his authority, clause 3 of the amendment cannot be applied to partnerships at all, nor to corporations, for both must act by agents. And that view is in conflict with several provisions of the act. It seems to me that the only way to give effect to the intention of Congress, as shown by clause 3, is to hold that it is applicable to partnerships and corporations (In re Marshall Paper Co., 102 Fed. 872, 43 C. C. A. 38) which become bankrupts, and that when the former, or the individual partners, seek a discharge from the partnership debts, neither can be discharged if the partnership, acting by a duly authorized agent, has obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit.

The cases cited in the opinion of the court, with one exception, relate to instances where the discharge of the bankrupt was opposed on a ground involving an "offense punishable by imprisonment" (clause 1), or where a forbidden act was done with a wrongful or fraudulent "intent." Such cases are distinguishable from a case arising under clause 3, where no question of punishable offense is involved, and where Congress has not used the word "intent," nor its equivalent, but has made a described act, done for the purpose of obtaining property, a bar to a discharge.

The only case cited that relates to the amendment in question is In re Dresser & Co. (D. C.) 13 Am. Bankr. Rep. 637, 144 Fed. 318.

The excerpt from that case quoted in the opinion of the majority appears in the report of the referee. No exception was taken to this conclusion of the referee, and the court, in deciding the case, makes no allusion to that part of the referee's report (144 Fed. 318), nor was that part of the report mentioned when the same case reached the appellate court (115 Fed. 1021, 74 C. C. A. 680). The fact that this report of the referee was acquiesced in by the parties, and not sustained by the opinion of either court, is mentioned in Re Gilpin (D. C.) 160 Fed. 171, 182, a well-considered and learned opinion which clearly shows that the referee's report is not sound in principle.

I have found no case directly in point construing clause 3, but the general principle that each partner is the agent of the firm as to all business within the scope of the partnership, and that, if one partner makes false or fraudulent representations of fact, the other partners are bound by such statements, although made without their knowledge, is recognized in the construction of the bankruptcy acts both in this country and in England. Strang v. Bradner, 114 U. S. 561, 5 Sup. Ct. 1038, 29 L. Ed. 248; Cooper v. Prichard, 11 L. R. Q B. Div. 351.

With all my deference for the opinion of my Brethren, I cannot concur in their view that there is no reason in "law, business, or morals" for the construction the learned District Court placed on the statute. In re A. F. Hardie (D. C.) 143 Fed. 607. The construction, I think, is good in law, because it is based on the apparent intention of Congress; in business, because it will tend to prevent false written statements to secure credit; and in morals, because it makes for fair dealing and righteousness.