In re ROBINSON.

(District Court, D. Massachusetts. February 7, 1919.)

No. 25160.

BANKRUPTCY ☞407(5)—RIGHT TO DISCHARGE—OBTAINING PROPERTY BY FALSE STATEMENT—"MATERIAL FALSE STATEMENT IN WRITING"—WORTHLESS CHECK.

　　A bankrupt, who obtains property by means of a check which he knows to be worthless, obtains it upon a "materially false statement in writing," within the meaning of Bankruptcy Act, § 14b (3), as amended by Act Feb. 5, 1903, c. 487, § 4 (Comp. St. § 9598), which defeats his right to a discharge.

　　[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Materially False Statement.]

In Bankruptcy. In the matter of Harry E. Robinson, bankrupt. On petition for discharge. Granted.

Thomas P. McKenna, of New York City, and Percy A. Atherton, of Boston, Mass., for objecting creditor.

Alvah L. Stinson, of Boston, Mass., for bankrupt.

MORTON, District Judge. The specifications of objection based on alleged false oaths by the bankrupt to the schedules, on his failure to keep books of account, and on the destruction by him after adjudication of his paid checks returned to him by the bank, involve an element of knowledge or intent by the bankrupt, which in each instance the learned referee finds not to have existed. On questions of this sort, the appearance of the bankrupt and the general atmosphere of the case are of much assistance in arriving at the truth; and the referee's conclusions accordingly carry great weight. In the present case he seems to have been clearly right as to the alleged false oaths; his findings that the failure to keep books, and the destruc-

tion of paid checks, were not prompted by an intent to conceal financial condition, are by no means so plainly erroneous that they can be set aside and disregarded. None of these specifications is sustained.

The only other specification is based on the giving by the bankrupt of a worthless check. The facts are not in dispute, and are as follows:

The bankrupt had a trading or speculating account with J. R. Williston & Co., stockbrokers. In August, 1916, they called on him for additional margin. He thereupon gave them his check to their order for $5,000, dated August 9, 1916, and drawn on the International Trust Company of Boston. As I understand the facts, the check was not dated ahead, but was delivered to Williston & Co. on its date and in the ordinary course of business. On that day and on the day previous the bankrupt's account at the Trust Company was overdrawn more than $1,500, and it had been continuously overdrawn since August 6th. He had no credit balance on it until September 16, 1916, when one of less than $30 is shown. For a considerable period prior to August 9th the bankrupt's bank account had been overdrawn much of the time. The $5,000 check was presented for payment on August 10th, and payment was refused. The bankrupt knew that he had not $5,000, nor anything like that sum, on deposit when he delivered the check; it was much larger than he was in the habit of drawing, and it does not appear that he had any reason to believe, or did believe, that it would be paid when presented.

The learned referee ruled that the check was not a materially false statement in writing made for the purpose of obtaining credit. He was apparently of opinion that the statement intended by section 14b (3) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [Comp. St. § 9598]) was a statement of financial condition only, like a commercial report. This is the view taken, with qualifications, by the District Court of Montana in Rea Bros., 251 Fed. 431.

Just what is meant by "a financial statement," or "a statement of financial condition," in this connection is not obvious. Must it be an asset and liability statement? Must it purport to be complete? If not, would a very condensed abstract showing net worth be within the act? It would seem that it must be so. But it would be a curious corollary that if the statement be not in the form of a commercial report (i. e., not in columns of figures), or be limited to a single piece of property, ownership of which is asserted, it is not within the act. In re Pincus (D. C.) 147 Fed. 621, 623, it was held that a false statement as to a single item of $10,000 noted at the foot of a commercial report was sufficient to bar the discharge. May a person obtain goods by means of written lies about his property or debts—a substantial crime—and still be entitled to a discharge in bankruptcy, provided only that he does not lie in columns? Or limits his statement to the assertion that he has $5,000 in the bank? There is difficulty in making the form of a statement or the ground which it purports to cover, rather than the purpose and substance of it, the controlling element.

The language of the act is "a statement in writing"—a plain expression, and one well known in the law in a somewhat analogous

connection. The wide scope given to the statutes making false pretenses criminal led in many states to legislation providing that false pretenses as to the purchaser's means or ability to pay should not be criminally actionable unless made in writing; e. g., Rev. Laws Mass. c. 208, § 28. Undoubtedly these statutes were known to the lawyers in Congress. The proceedings in Congress show that its attention was directed chiefly to commercial reports, or formal statements of financial condition, but the language used was not limited to them, as it easily might have been, if that had been the intention. The principle being adopted, that to obtain property on credit upon a materially false statement in writing should bar discharge, I see no sufficient reason why the natural meaning of the language in the act should be cut down, so as to include only statements made in a particular form, or purporting to have a certain scope. Assuming (although without so deciding) that the statement must be one relating directly to means or ability to pay, it seems to me that statements of that sort in whatever form, and however framed, come within section 14b (3).

By the law of Massachusetts a check delivered by the drawer to another person in payment for property or credit is a statement that there are funds on deposit to the drawer's credit, and the check will be paid. "If the drawer passes a check to a third person, the language of the act is, 'It is good and will be duly honored.' * * * In such case, if he knew that he had neither funds nor credit, it would probably be holden to be a false pretense." Morton, J., Commonwealth v. Drew, 19 Pick. (Mass.) 179, 186. And such appears to be the general law. Merchants' Bank v. State Bank, 10 Wall. 647, 19 L. Ed. 1008; 12 Ency. of Law (2d Ed.) 838. To obtain property by a worthless check is to obtain it, in my opinion, by means of a materially false statement in writing, within the meaning of the Bankruptcy Act.

There remains the question whether the bankrupt "obtained money or property on credit." If not, he is entitled to his discharge, notwithstanding that he may have made a false statement within the meaning of the section under discussion. The testimony on this point is meagre. All that appears is that Williston & Co. got the check and passed it to the bankrupt's account. It was dishonored the next day and presumably was immediately charged back to him. There is no testimony that he obtained any money or property by it. The most that counsel for the objecting creditors assert is that Williston & Co. did not close out the commodities or securities which they were carrying for the bankrupt, as they would have done, but for the check. Even of this there is no clear evidence. The burden is upon the objecting creditors to establish their objection; and that they have not done. The result is that this specification of objection also fails and the discharge should be granted.

So ordered.