## In re DRESSER.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

No. 249.

1. BANKRUPTCY — DISCHARGE — OBTAINING PROPERTY BY MEANS OF FALSE STATEMENT.

Bankr. Act July 1, 1898, c. 511, § 14b (3), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], as amended in 1903 (Act Feb. 5, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684]), which authorizes the refusal of a discharge to a bankrupt if he has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit," should not be given the strict construction required ·in case of a criminal statute, but one sufficiently liberal to effectuate the intention of Congress, which was to deprive any bankrupt of the benefit of a discharge who has obtained property by means of a written statement false in material matters, and within the fair meaning of the clause the statement was "made to such person," if it was given to an agent for the purpose of using it in obtaining property for the bankrupt, and if its contents were communicated by the agent to such person, and it is not necessary that the statement itself should have been delivered to such person, nor that it should have been made for the purpose of inducing any particular person to rely upon it.

2. SAME — REFUSAL TO ANSWER QUESTIONS.

The fact that the refusal of a bankrupt to answer material questions in the course of the proceedings which were approved by the referee was based on the claim of his constitutional privilege not to incriminate himself does not deprive the court of the right to deny him a discharge because of such refusal, under Bankr. Act July 1, 1898, c. 541, § 14b (6), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], as amended in 1903 (Act Feb. 5, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684]).

Herbert H. Maass, for appellant.

R. Burnham Moffat (Robert D. Murray, of counsel), for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. By this appeal it is sought to reverse a judgment of the District Court refusing the bankrupt's discharge. 144 Fed. 318. The court decided that the specifications of objection filed by certain creditors who had purchased drafts drawn by the American Tubing & Webbing Company, and accepted by Dresser & Co., were established by the proofs. The question presented is whether Dresser had (1) "obtained property on credit from any person upon a materially false statement in writing, made to such person for the purpose of obtaining such property on credit;" or had (2) "in the course of proceedings in bankruptcy refused to obey any lawful order of, or to answer any material question approved by, the court," within the meaning of section 14, subd. b, cls. 3, 6, Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428] as amended by Act. Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684]. The facts proved in support of the first objection, concisely stated, were these: Dresser concerted with a corporation having intimate business relations with

his firm of Dresser & Co. to raise money by the sale through a broker of accommodation drafts to be drawn by the corporation and accepted by the firm. The scheme contemplated that the proceeds of the drafts should be paid by the broker to the corporation, go into its bank account, and be used by it to the extent required by its financial necessities, and the balance be sent to the firm. To facilitate the sale of the drafts by inducing purchasers to buy, a written statement, false in material facts respecting the financial condition of the firm, was made by Dresser, and placed in the hands of the broker; and in making sales of the paper the broker communicated the substance of the contents of the statement to the various purchasers to whom he sold the drafts. The corporation sent the firm a large part of the proceeds of the drafts sold by the broker to purchasers, who bought them upon the faith of the contents of the statement.

The only part of the contention for the appellant which deserves serious consideration is the argument that to bring the case within the meaning of clause 3 it is necessary to prove that the false statement was delivered by the bankrupt himself to the creditor from whom the property was obtained, or at least that it was meant to be delivered to the particular person of whom the property was obtained, and that in any case the statement itself must have been shown to the person from whom the property was obtained.

The provisions of the section are not to receive the strict construction given to criminal statutes, but should receive a reasonable one to effectuate the intention of Congress, so far as that can be ascertained by the language employed. We think that intention was to deprive any bankrupt of the benefit of a discharge who has obtained property from any person by means of a written statement false in material matters; and within the fair meaning of the clause the statement is made to such person, if it was given to an agent for the purpose of using it in obtaining property for the bankrupt, and if its contents were communicated by the agent to such person. The words "such person" refer to the previous words "any person," and the statement is "made to such person" whenever it is made by the bankrupt himself or his duly authorized agent; and it is none the less "made," although the statement itself is not delivered, when its contents are correctly communicated by the agent. The purpose of Congress in prescribing a written statement to be essential was to protect the bankrupt from the danger of having his statement perverted or distorted by parol evidence, and that purpose is equally well accomplished whether the statement itself is used in obtaining the property, or whether the contents are communicated. The language of the clause does not necessarily import that the statement shall have been made for the purpose of inducing any particular person to rely upon it.

The phraseology of the clause in its entirety is consistent with the interpretation which we have thus indicated. We are asked to read it as though instead of the word "made" Congress had used the

word "delivered." The use of that word would have required a very different construction to be placed upon the clause, and if Congress had intended such a construction it is to be assumed that the word would have been used.

The facts proved in support of the second objection were these: During his examination at a meeting of creditors the bankrupt refused to answer certain material questions relating to the disposition of certain of his property, assigning as a reason that the answer might tend to incriminate himself. The referee formally approved the questions, but refused to order the bankrupt to answer. The facts bring the case directly within the language and spirit of clause 6.

The contention for the appellant is that to enforce clause 6 under the circumstances of this case would deprive the bankrupt of his constitutional right of immunity from self-incrimination. The proceeding for a discharge is not a criminal proceeding, and the constitutional protection extends to the protection of the witness in criminal proceedings only; and of course it may always be waived by the witness himself. We entertain no doubt that it is within the power of Congress to grant or to refuse a discharge to a bankrupt upon such conditions as it may deem proper. Such a privilege is not a natural right, or a right of property, but is a matter of favor, to be accepted upon such terms as Congress sees fit to impose.

We do not deem it necessary to elaborate the reasons for the conclusions thus reached as to both of the objections, because they are satisfactorily expressed in the very full and excellent opinion of Referee Dexter, to whom, as special commissioner, the issues were referred to report the facts, with his opinion thereon.

The judgment is affirmed, with costs.