## In re A. B. CARTON & CO.

(District Court, S. D. New York. August 21, 1906.)

1. BANKRUPTCY—OBJECTIONS TO DISCHARGE—ESTOPPEL OF BANKRUPT TO DENY STANDING OF CREDITOR.

While Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418] does not give a bankrupt the right to object to the proof of claims, but rests such right in the trustee after his appointment, the bankrupt has an equitable right to insist that objection shall be made to illegal claims, and his failure to exercise such right by requesting the trustee to make such objection estops him to deny the standing of a creditor, whose claim is allowed without objection, to file objections to his discharge.

2. SAME—PRIOR VOLUNTARY COMPOSITION—ACCORD AND SATISFACTION.

A voluntary composition between a debtor and his creditors, after proceedings in involuntary bankruptcy had been instituted, by which the creditors agreed to accept 40 per cent. of their claims in full satisfaction, one-half to be paid in cash and the remainder to be evidenced by the notes of the bankrupt, does not operate as an accord and satisfaction until full payment has been made, and where the debtor is subsequently adjudged a bankrupt on his own petition, not having paid the notes, the creditors joining in the agreement are entitled to prove their original debts, giving credit for the cash payments received.

3. SAME—OBJECTIONS TO DISCHARGE—FALSE STATEMENTS TO OBTAIN CREDIT.

Under Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427] as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 684], which provides that a bankrupt shall be denied a discharge if he has obtained property on credit by means of a materially false statement in writing made for the purpose, it is the act of making such statement and the fraudulent intent which constitute the ground for refusing the discharge, and the right to make the objection is not confined to the person defrauded, but it may be made by any "party in interest."

In Bankruptcy. On exceptions to report of special commissioner recommending that a discharge be denied.

James, Schell & Elkus, for objecting creditors.
Gainsburg & Solomon, for bankrupts.

HOUGH, District Judge. In 1904 a petition in involuntary bankruptcy was filed against the present bankrupts. The result thereof was a compromise, followed by an amicable dismissal of the petition, based upon an agreement, the operative words of which are as follows:

"We, the undersigned, creditors of Andrew B. Carton and Lawrence A. Carton, heretofore doing business under the firm name of A. B. Carton & Co., do hereby agree, to and with each other, to accept, for each and every dollar said firm owes or is indebted unto us, the sum of forty (40) per cent., the same to be received by us in full satisfaction, compromise and discharge of our several and respective claims and demands against said firm, and which shall be paid to us as follows: Twenty (20) per cent. thereof in cash, and twenty (20) per cent. to be evidenced by the promissory notes of the said firm, payable within four months and eight months respectively."

The present objecting creditors signed this agreement, received the 20 per cent. in cash provided for, accepted the notes, and Carton & Co. went on in business.

For reasons which produce sympathy, but which appear to me immaterial to the present contention, they found it impossible to pay the notes issued under the above recited agreement; and thereupon sold their stock, fixtures, and books, and filed this voluntary petition, under which they now seek to be discharged.

The creditors who have appeared in this second bankruptcy are substantially the same as those who participated in the first, and they have severally (including especially the objecting creditors) filed claims for their original indebtedness; giving credit for whatever they received under the partially executed compromise of the bankruptcy of 1904. But they have not (or, at least, the objecting creditors have not) brought into court or surrendered either to the bankrupt or his trustee, the unpaid notes issued in 1904, which they may be assumed still to possess.

The creditors objecting constitute the firm of Faulkner, Page & Co., and of their numerous objections I shall consider but two, of which the first alleges in substance that the bankrupts, prior to the proceedings of 1904, issued a materially false statement in writing to a mercantile agency; that Faulkner, Page & Co. were subscribers to that agency; that said statement was delivered by the agency to Faulkner, Page & Co., and in reliance thereon they delivered to the bankrupts certain goods which were unpaid for at the time of the filing of the petition of 1904.

The second specification to be considered asserts that another materially false statement in writing was made by the bankrupts prior to the proceedings of 1904 to the firm of Vietor & Achelis, and that in reliance on said statement that firm sold and delivered to the bankrupts goods which were not paid for at the time of the filing of the petition of 1904.

The first of the above-described specifications the commissioner has overruled on the ground that the delivery of the false statement in question to the commercial agency, its subsequent transmission to Faulkner, Page & Co., and their action upon it was not sufficient to warrant a refusal of discharge under the act; because false statements made to mercantile agencies are not among the lawful grounds of objection, and to this finding the objecting creditor has excepted.

The second of the specifications the commissioner has sustained, holding that it is within the purview of the act to permit Faulkner, Page & Co. to set up as an objection to the discharge of these bankrupts a false statement made to Vietor & Achelis upon which the latter firm could have prevented the discharge of the applicants although they have filed no objections themselves; and to this finding the bankrupts have excepted.

The bankrupts, however, make a preliminary suggestion requiring consideration, before any review of the specifications above noted can be made. They assert that the compromise agreement above set forth operated as a discharge of the original debts of 1904, which the creditors have treated as revived by the failure to pay the 20 per cent. notes.

The objecting creditors reply that their claims have been proved and allowed, as if the compromise of 1904 had never been suggested,

and that such allowance has been without objection on the part of the bankrupts, who are therefore estopped to set up the compromise as a defense.

Bankrupts rejoin that they could not contest the claims of creditors by attempting to confine them to the unpaid balances of the notes issued in 1904 (which they maintain should have been done), because the sole right to object to the proof and allowance of claims rests in the trustee. In re Lewensohn, 121 Fed. 538, 57 C. C. A. 600.

This case does limit to the trustee the right, under General Order 21 (89 Fed. ix; 32 C. C. A. xxii), to re-examine any claim filed against the estate; but suggests that if the trustee refuse to proceed in accordance with law and justice, that the court could by order compel him so to do or remove him for disobedience.

It seems to me clear that if it had been pointed out to the trustee that the creditors of this estate were offering for proof claims uniformly exaggerated, i. e., demanding 80 per cent. of their debts as they existed in 1904, instead of 20 per cent. thereof; it would have been his duty at the instigation of the bankrupts to have this contention disposed of; and that the bankrupts having failed to exercise this right, given in my opinion by the equity of the statute, they are now estopped from claiming upon their application for discharge, that the claims were wrongfully allowed for the greater amount.

There is no element of surprise in this matter; it must have been obvious while claims were in process of proof that on the nature of the claim allowed would depend the creditor's ability or inability to propound these very obvious objections to discharge. The orderly administration of the act required the bankrupts to exercise what I conceive to be their right, while the judicial process of allowing the claims presented was going on, and not reserve till now what is practically a re-examination of the claim of every creditor who chose to object to discharge.

I think this a case of first impression, and it may be argued on the other hand that the language of section 14b (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]) apparently contemplates a new and independent proceeding to which an estoppel based upon previous proceedings in bankruptcy should not be applied. That section declares that the judge shall hear "such proofs and pleas as may be made in opposition (to the discharge) by parties in interest."

This language evidently does not confine the right of objecting to a discharge to creditors, but in a proper case seems to open the field of objection to any one who can show an interest in the proceeding. For example, it would appear that if the bankrupt had committed an offense which within section 14b 1 would prevent a discharge, such offense might be alleged against discharge by the District Attorney, who, as representing the justice of the United States would, I think, clearly be a "party in interest," although he had before that time taken no part whatever in the bankruptcy proceeding. From which it may be urged that upon an objection to discharge duly filed by any "party in interest," a new proceeding is instituted in which every right of the objector to urge his contention may be considered de novo.

148 F.—5

As it is upon this theory that the commissioner has proceeded in his very careful report, I shall consider the question of the objecting creditors' standing, although, as above noted, I am inclined to the opinion that the bankrupts are estopped by the judicial allowance of the claims in question from contesting either their amount or the standing conferred by their allowance at the higher figure.

The compromise agreement referred to was entirely outside of the bankruptcy law; it is, in effect, a composition at common law or a "voluntary composition deed." Looking at the instrument in question, therefore, as a voluntary composition, it appears to me plain upon its language that it was the intent of the parties thereto, including these bankrupts, that it should not and could not operate as a novation until and unless both the money and the notes were actually paid. The language is not that certain considerations are accepted in settlement and compromise, but that the creditors agree to accept a certain percentage of their allowed claims "which shall be paid" in the manner specified. The use of future tense seems conclusive as to the intent of the parties.

The presumption of law with respect to any voluntary composition agreement is that it is only discharged "when the terms of the composition are carried out," which includes payment, and not a mere issuance of paper. Ransom v. Geer (C. C.) 12 Fed. 607, with approval.

Considering that the agreement of 1904 was not done under the sanction of the bankruptcy act, it must be regarded as a New York contract, and unless the explicit language of the agreement requires a contrary construction it is clear that in this state a failure to carry out to the letter a composition agreement revives the original debt. Dale v. Fowler, 12 How. Prac. (N. Y.) 462.

It is to be remembered that the notes given in 1904 by these bankrupts were their own notes unindorsed, and their issuance and receipt followed by their nonpayment have been well described upon the argument as an accord without a satisfaction. Nonpayment of such notes clearly revives the original debt. Booth v. Smith, 3 Wend. (N. Y.) 68; Conkling v. King, 10 Barb. (N. Y.) 375.

The second of the specifications of objection above noted is also, I believe, a case of first impression; but with the commissioner I am of opinion that it is the act of issuing a materially false statement, and the fraudulent intent of the man who issues it, that the statute seeks to punish by refusing a discharge. It should not depend upon the whim or good nature of any particular creditor to whom the false statement was made whether the offending bankrupt should be given or refused his discharge. Any "party in interest" who chooses to bring the wrongful act to the attention of the court and proves that it was wrong within the meaning of the statue is entitled so to do.

In a case arising under a different subdivision of the statute, and upon facts quite different, Referee Dexter of this district has expressed opinions quoted by the commissioner herein, and which I adopt as a terse statement of the views I entertain:

"The policy of the bankruptcy act is founded on equal rights and privileges to all creditors; it is not intended as a means to punish the bankrupt at the option of the defrauded creditor only. Discharge from debts is a mat-

ter of favor, and not a matter of right. Honesty on the part of a bankrupt is rewarded by a discharge. Fraud and dishonesty are stamped with disapproval of a discharge. Contumacy on the witness stand, a previous discharge within six years, obtaining money upon false statements, and the commission of an offense punishable by imprisonment under the act, are all valid objections to a discharge, and are not limited to the defrauded creditors alone, but may be urged by any and all creditors. It is the fraudulent conduct that is aimed at, and not retaliation for the individual loss. So that in a peculiar sense, the concern of one creditor is the concern of all. As all share equally in the distribution, so all are protected equally by the withholding of a discharge." In re Berry (Jan. 6, 1905).

The question raised by the first of the above-noted findings of the commissioner is interesting, but it appears to me (in this case) wholly academic. It has never been decided whether under any circumstances a false statement contained in a report to a commercial agency can be made the ground of successful objection to discharge. The considerations advanced in Re Dresser & Co. (D. C.) 13 Am. Bankr. Rep. 619, 620, 144 Fed. 318, are entitled to great weight, and, in my opinion, show that the usual commercial agency report obtained by an agency in order that it may give the new merchant a "rating," and for general distribution among its customers, cannot be made the basis of successful action by an objecting creditor

If, however, such a report as is here shown, be obtained from a merchant by a commercial agency at the request, disclosed or undisclosed, of one or more of the agency's customers, it seems to me incredible that the merchant furnishing such report can be supposed to have given it for any other purpose than of enlightening those persons who habitually deal with him on credit as to his true financial condition. The custom of trade is so well known that when an agency applies to a merchant for a specially signed report on his condition he must know that such report is for the special purpose of enabling those who usually vend him goods to decide upon his financial responsibility.

The testimony in this case leaves me in doubt whether the report produced by Faulkner, Page & Co. was a "special report" or not, or whether it was obtained at the instance or request of Faulkner, Page & Co. or any other creditor or customer of the bankrupts. If the report were obtained upon special request, I fail to see why the doctrine of Mills v. Brill, 105 App. Div. 389, 94 N. Y. Supp. 163, and Eaton v. Avery, 83 N. Y. 31, 38 Am. Rep. 389, should not apply. It cannot be that a merchant may in bankruptcy avoid the consequences of making false statements by always making them to a commercial agency, even though such agency specially request him to tell the truth for a special purpose.

This specification the commissioner has overruled, but inasmuch as he has refused the discharge on other grounds, the discussion, though interesting, is not at present material.

The report is confirmed, and the discharge denied.