## In re AUGSPURGER.

### (District Court, S. D. Ohio. December, 1909.)

1. BANKRUPTCY (§ 407*)—FALSE STATEMENT—CONCEALMENT OF DEBTS—REFUSAL OF DISCHARGE.

Where at the time a bankrupt made a statement to a commercial agency for credit, he had received $3,500 from his father and $1,585 from his wife, for both of which he had given notes, neither of which he disclosed in such statement, but included them in his list of creditors in his assignment for the benefit of creditors, and also in his bankruptcy schedules, and about the time he made an assignment in trust for the benefit of his creditors, he further acknowledged the indebtedness to his wife by giving her a second note to cover the amount due her, his claim that the concealment of such debts was not intentional and willful because the debt to his father represented money advanced to him which was to be deducted from his share of the father's estate in case he lost the money, and that he did not regard the debt to his wife except as an advancement to enable him to go into business, etc., was unsustainable.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

2. BANKRUPTCY (§ 407*)—INSOLVENCY—KNOWLEDGE—PRESUMPTION.

Where a bankrupt was insolvent in fact when he made a financial statement in which he concealed certain of his debts, he should be presumed to have had knowledge thereof.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

3. BANKRUPTCY (§ 407*)—FALSE FINANCIAL STATEMENT—INTENT TO DECEIVE.

Where a bankrupt had knowledge of his insolvency at the time he made his financial statement, concealing certain debts to his father and wife, his intent to deceive will be presumed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

4. BANKRUPTCY (§ 407*)—DISCHARGE—FALSE STATEMENT—COMMERCIAL AGENCIES.

Where a false financial statement made by the bankrupt to a commercial agency, recited that it was designed as a basis for credit, and a creditor objecting to the bankrupt's discharge, extended credit on the faith of the statement, a discharge should be denied.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 760; Dec. Dig. § 407.*]

In the matter of W. K. Augspurger, bankrupt. On exceptions to bankrupt's discharge. Sustained.

W. A. Haines, for bankrupt.

O. H. Mosier, L. F. Ratterman, and M. F. Roebling, contra.

SATER, District Judge. Section 14, cl. "b" (3), of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

S. Comp. St. Supp. 1909, p. 1310]), debars from discharge a bankrupt who has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

In Gilpin v. Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023, the word "false," as occurring in that clause, is said to mean more than merely erroneous or untrue, and to be used in its primary legal sense as importing an intention to deceive. It was further held that the statement specified in such clause, to constitute a bar to a discharge, must have been knowingly and intentionally untrue. There are cases which hold that the statement need not be intentionally false. As the result here must be the same, whether the rule announced in those cases or that adopted in the Gilpin Case be followed, I shall treat the question presented as this, Did the bankrupt knowingly and intentionally make a false statement as charged in the specifications?

At the time Augspurger received from his father $3,500 he executed and delivered to him two promissory notes aggregating that amount. On cross-examination, in explanation of why he did not report in his signed statements to the R. G. Dun Company the notes held by his father, he said:

"The reason for not including them was, when my father gave me that money, he told me if I lost it, it would come out of my inheritance, and in fact it has been so arranged that it is to be taken from what I otherwise would inherit, and I regarded that money as part of my capital and used it as such. The fact of those claims being presented was not at my instigation. I always considered that as part of my working capital, and used it as such, and had no intention of deceiving any one; simply used it that way. It didn't occur to me that I should report it, and always understood that that money was advanced to me to do business with."

On redirect examination the following questions were asked of and answered by him:

"Q. You gave a note to your father at the time he advanced this money? A. Yes, sir. Q. Was there anything on that note to show that it was an advancement? A. The matter was advanced for father to make a will, but mother was averse to making a will, and I did this to protect the other children. There are other children, and I didn't want to take advantage of them; this was done to protect them. Q. And the understanding you had with your father was that it was an advancement and to be deducted from what you would eventually inherit? A. Yes, sir; and if I lost it, it came out of my share of the estate."

The bankrupt also owed his wife, including interest, $1,585, for money used in his business. For a part of this he gave her a note some years ago. The residue was represented by advancements made on checks. On redirect examination he testified regarding his indebtedness to his wife, as follows:

"Q. Why didn't you include that in your statement? A. Advanced to me to be used in the business, and I expected to be successful and pay it back. Q. You knew it was a debt that you owed her? A. I didn't look at it that way. It was advanced to me to go into business. Q. You gave her a note? A. Yes, sir. Q. You knew that was evidence of the debt that you owed her? A. Yes, sir. Q. When was this other note made out, in 1907, or 1908, that you spoke of? A. To my wife? Q. Yes. A. That was made some time in December, 1907."

The notes executed and delivered by Augspurger to his father and wife were in themselves evidences of indebtedness, given by him without compulsion. After he made his assignment in trust for the benefit of his creditors under the state law, without objection on his part or that of his attorney, those notes were proved and allowed as valid claims against his estate. When he voluntarily filed his petition in bankruptcy, he named his father and wife as creditors and listed the notes as due from him to them respectively. These recognitions of liability do not comport with his evidence. The claim that the sums obtained from his father and wife were merely advancements from them respectively was an afterthought. If those claims were so far valid as to be scheduled by him under oath as valid debts and to share in the distribution of his estate, and they did so share without protest from him, they were so far bona fide that they should have been listed as obligations in any statement made by him as to his financial condition to obtain credit. The sum obtained from his father cannot, under Augspurger's own evidence, be treated as an absolute advancement. If the father should lose all his property other than the $3,500, Augspurger would be compelled to repay all excepting what his portion of the $3,500 would be, otherwise the other children of whom he did not want to take advantage would not be protected. His statement that if he lost the $3,500 it was to be taken out of his share of his father's estate implies that if he did not lose it he was to repay it. The giving of notes to protect the other children of the family is inconsistent with the idea of an absolute gift or advancement. There was at least a conditional, if not an absolute, liability. If Augspurger treated the $3,500 as a part of his working capital and as a sum not to be repaid, good faith required of him that he should resist the proving of the claim as a valid one against his estate. The father manifestly did not regard the $3,500 in the light of an advancement or a gift, and it is significant that neither he nor the bankrupt's wife was called as a witness. Had he returned his indebtedness to his wife and the notes which his father held against him, his liabilities would have been approximately $5,100 greater than recited in his signed statements. As he shows in one of them an excess of assets over liabilities of $3,200, and in another $3,400, he was insolvent at the time such statements were made in the sums of about $1,900 and $1,700 respectively. He had not lost all that he had obtained from his father, and if it be true that if he lost the $3,500 evidenced by the notes given to his father, that sum was to be treated as an advancement, the condition had not arisen, when such respective statements were made, that absolved him from liability on such notes, or as would justify him in treating the money represented by such notes as an absolute advancement from his father. He states that an arrangement has been made whereby the $3,500 are to be taken from his inheritance, but for aught that appears that arrangement may have been made after his father had received his distributive share of the bankrupt's estate.

There was no mention in any statement that he ever gave out for the purpose of obtaining credit, of any liability to his wife. He says he expected to be successful and to pay it back. This statement is susceptible of no rational construction other than a recognition of a

debt due to his wife. He does not say that he did not expect to pay it back if he was not successful. It was an advancement, or assist-ance rendered to him by her to enable him to go into business, and to evidence his obligation to her he executed and delivered a note. Ei-ther shortly after or before he made an assignment in trust for the benefit of his creditors, he further acknowledged his indebtedness to his wife by giving her a second note to cover the sums obtained from her on checks. He knew of his obligation to her. The pre-sumption is that he knew his own financial condition. Loveland, Bankr. 189. In view of his outstanding obligations to his father and wife, he must be charged with knowledge of his insolvency, and, having such knowledge, his intent to deceive by his written material, false state-ments, in view of the nature of the transactions and his acts in con-nection therewith, must be conclusively presumed.

Should the exceptions be overruled and the bankrupt discharged be-cause his representations as to his financial condition were made to a mercantile agency?

In 14 Am. & Eng. Enc. Law (2d Ed.) 151, it is said:

"If a person makes to a mercantile agency a false statement as to his own or another's pecuniary condition, with the intent that it shall be communi-cated to and believed by merchants, and shall induce them to extend credit, the representation will be considered as made to any merchant to whom it shall be communicated, and who shall rely upon it in extending credit."

Judge Hough, in Carton, In re (D. C.) 148 Fed. 63, 67, manifestly concurs in this view, for he says:

"If, however, such a report as is here shown, be obtained from a merchant by a commercial agency at the request, disclosed or undisclosed, of one or more of the agency's customers, it seems to me incredible that the merchant furnishing such report can be supposed to have given it for any other purpose than of enlightening those persons who habitually deal with him on credit as to his true financial condition. The custom of trade is so well known that when an agency applies to a merchant for a specially signed report of his condition, he must know that such report is for the special purpose of enabling those who usually vend him goods to decide upon his financial responsibility."

See, also, Remington, Bankruptcy, § 2752; Katzenstein v. Reid, 41 Tex. Civ. App. 106, 91 S. W. 360, 16 Am. Bankr. R. 740; Wilmot v. Lyon & Co., 7 O. C. D. 394 (11 Cir. Ct. Rep. 238); Mooney v. Davis, 75 Mich. 188, 42 N. W. 802, 13 Am. St. Rep. 425; Re Dresser, 146 Fed. 383, 76 C. C. A. 655.

In Pincus, In re (D. C.) 147 Fed. 621, it was in substance ruled that a written financial statement made by a party to a commercial agency, which shows on its face that it was made as a basis for credit with the associate members of such company, and which is com-municated by such agency to members who give credit on the faith of it, is equivalent to one made directly to them, and if materially false, will debar the debtor from the right to a discharge in bankruptcy. I incline to the views expressed in the above authorities, although a doubt as to their correctness is suggested by Collier on Bankr. 287.

Each of the statements signed by Augspurger recites that it is de-signed as a basis for credit. It is admitted that the exceptor's claim is a valid one, and that at the time the bankrupt made each of the written statements he knew that it was obtained for the purpose of giving him

a rating for the use of merchants. It is shown by the evidence that the business of the R. G. Dun Company was to obtain reports for the protection of the trade, and that the exceptor was a customer of that company, and relied on its reports alone in extending credit to the bankrupt. The bankrupt obtained the property of the exceptor on credit, on the strength of his statement of his financial condition, which was relied on by the creditor, which statement was in writing, was materially false, and was knowingly made for the purpose of obtaining credit and property from such exceptor and any other merchant to whom it might be submitted by the mercantile agency.

The exceptions to the bankrupt's discharge are sustained.