## In re RUSSELL.

### (Circuit Court of Appeals, Second Circuit. February 8, 1910.)

### No. 141.

1. RELEASE (§ 25*)—CONSTRUCTION—INTENTION OF PARTIES.

Releases are to be construed according to the intent of the parties, as it may be gathered, if it can be gathered, from the instrument itself.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 48; Dec. Dig. § 25.*]

2. BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSAL OF DISCHARGE—FALSE STATEMENTS—RELEASE.

An agreement by a creditor based on a valuable consideration, which recites that one of its purposes is to cancel and surrender certain written statements made by a debtor on which he obtained credit, the truthfulness of which was in controversy between the parties and by which the creditor expressly cancels and "agrees to surrender up the same, and concedes that any inaccuracies therein * * * were inadvertent and without wrongful intent," debars the creditor from using such statements as a ground of objection to the debtor's discharge in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

3. BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSAL OF DISCHARGE—FALSE STATEMENTS.

A financial statement delivered to a commercial agency for general circulation among its inquiring subscribers is not within Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310), which makes it a ground for refusing a discharge that the bankrupt has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Walter Russell, bankrupt. On appeal by the Commercial Trust Company of New York from an order granting a discharge. Affirmed.

The following is the opinion of the trial court:

I think that the contract of March 2, 1906, between Mr. Russell, Mrs. Russell, and the Commercial Trust Company bars the Trust Company from taking legal proceedings of any kind to the disadvantage of the bankrupt based on the financial statements made to the Trust Company and the Bradstreet Company. There was ample consideration in Mrs. Russell's indorsement for $17,-500 and her transfer of her collateral. The Trust Company, by that contract, agreed to cancel and surrender the said statements, conceded the inadvertency of any misstatements therein, and waived and released any claim in that regard. The effect of that agreement, in my opinion, was to leave the parties to it subsequently in the same condition in which they would have been if no such financial statements had ever been made. This conclusion makes it unnecessary to consider the question elaborately argued by the bankrupt's counsel whether the statements were in fact untrue.

My conclusion is that the referee's report should not be confirmed, and that a discharge should be granted to the bankrupt.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Campbell & Moore (William J. Wallace, of counsel), for appellant. Charles A. Boston, for appellee.

Before LACOMBE and WARD, Circuit Judges, and HAND, District Judge.

LACOMBE, Circuit Judge. On April 14, 1908, Russell filed his petition and was adjudged a bankrupt. On June 8, 1908, he applied for his discharge. The creditors were duly cited to appear; the Commercial Trust Company, a creditor in the sum of $40,000, duly appeared and opposed the discharge, filing written specifications of objection. These specifications set out two statements in writing by the bankrupt, which the objecting creditor claimed were materially false and were made to the Trust Company for the purpose of obtaining property from it on credit, such property being obtained from the creditor upon said statements. The bankrupt vigorously denies the falsity of such statements, which are dated respectively January 26, 1907, and April 26, 1907. The case was sent to a referee as special master for examination and report. Testimony was taken, and he reported (February 24, 1909) that both statements were false, that the bankrupt obtained property from the creditor on the strength of each of them, and recommended that discharge be denied. The District Judge overruled the report and granted discharge, basing his decision on a certain agreement between the bankrupt and the creditor (dated March 2, 1908) which will be hereinafter referred to. The order granting discharge is now here on appeal. The opinion of the District Judge will be found above. The facts detailed in the record are as follows:

Russell is an artist who engaged in various business ventures connected with real estate and the erection of buildings thereon. In May, 1905, he made a statement to a reporter of Bradstreet's Commercial Agency giving an estimate of his financial condition. This statement is not specified and was not considered by the special master. On January 12, 1907, Russell wrote a letter to the Trust Company in respect to opening accounts for two corporations, and upon receiving a reply called (January 14th) and made himself known, had a conversation with its president, and referred the latter to four individuals as to his honesty, integrity, and general standing. The company wrote to these individuals the same day and received favorable replies. It also applied to the Bradstreet Company for a report, and on the same day—January 14th—received a copy of the statement of May, 1905. Thereupon on January 29, 1907, the Trust Company loaned Russell $20,000 on his demand note with collateral. On January 26, 1907, Russell made a statement in writing to the Bradstreet Company giving an estimate of his financial condition on a printed form furnished by the company signed by him. This is one of the statements enumerated in the specifications. Whether or not it is false has been hotly contested, but we do not find it necessary to decide that question. The Bradstreet Company kept this statement on its own files, but on February 2, 1907, it sent to the Trust Company a copy of its contents, adding that, while "well regarded personally and believed to possess

considerable means, no definite estimate of same is obtained." On February 13, 1907, the Trust Company made a further loan to Russell on his demand note for $5,000. Subsequently on April 15, 1907, the Trust Company called on Russell for a statement as to his financial condition; he sent them such written statement signed by himself on April 26th. This is the other statement set out in the specifications of objections, and it will not be necessary to decide whether or not the special master erred in finding that it was false. On May 4, 1907, the Trust Company loaned to the Dayton Construction Company (in which Russell was interested) on its note due August 5th, with collateral, $12,500. The president of the Trust Company asserts that Russell indorsed this note, the latter asserts that he did not; the question might readily have been determined by producing the note. This was not done, and upon examining all the evidence bearing on this branch of the case we are inclined to the opinion that his indorsement was not on it. Inasmuch, however, as a note of one Dorrance ($15,000), to the Dayton Company which was indorsed by Russell was substituted for the Dayton Company note when it came due, the question becomes unimportant; Russell was of course liable on this Dorrance note whether the proceeds of the prior note went to the Dayton Company or to himself.

Some months later, the panic of 1907 having intervened and in January or February, 1908, differences having arisen, the matter of the truthfulness or falsity of these two statements was taken up in an interview or interviews between counsel for the Trust Company and Russell. Counsel insisted that there were several false representations in the written statements, that they could have Russell arrested and put in jail in a civil action on a charge of fraud, that his reputation would suffer, that Russell was up against a very grave proposition. Counsel asked if Russell's wife had property, and if she would not give up some of it to help him out of this fix. These interviews resulted in the agreement, above referred to between Helen A. Russell, the wife, of the first part, Walter Russell of the second part and the Trust Company of the third part, which was executed March 2, 1908. It recites that "the party of the second part has heretofore borrowed certain moneys from the party of the third part aggregating $40,000 and has delivered written statements to the party of the third part as to his assets and liabilities, and has transferred to the party of the first part certain properties included in said statements." The indebtedness stated is the $25,000 loaned to Russell and the $15,000 due on the Dorrance note indorsed by him, which was substituted for the original Dayton Company note for $12,500. It further recites that "the party of the first part (the wife) desires to secure the withdrawal and cancellation of any such filed statements and to avoid any contention regarding the validity of any such transfer of property to her, and to obtain from the party of the third part forbearance of its claim against the party of the second part and to that end has agreed to assume responsibility for a portion of said indebtedness, to wit, the sum of $17,500, and to secure the payment thereof by the assignment as collateral security" of certain property and securities specifically enumerated.

It further recites that:

"The party of the third part in consideration of such assumption and giving of security by the party of the first part as aforesaid has agreed to forbear as herein provided in respect to its claim against the party of the second part and has agreed to cancel and surrender any statements delivered to it by him and to concede the inadvertency of any misstatements therein, and to waive and release any claim in that regard, and in respect to any transfer of properties from said party of the second part to said party of the first part and to waive and release any claim or right against them or either of them or against any such properties on account of any such transfer."

The parties mutually covenant and agree that Mrs. Russell shall indorse and deliver a note of her husband for $17,500 securing the payment thereof by certain specified collateral, that Russell shall also sign and deliver two other notes for $11,250 each, and that the Dorrance note and any and all renewals thereof or securities, if any be obtained from Dorrance, shall be retained as security. Then follows the covenant of the Trust Company in the following language:

"Fourth. The party of the third part agrees that any statements filed with it by Walter Russell in respect to his property or assets or resources, be and the same are hereby in all respects canceled and agrees to surrender up the same, and concedes that any inaccuracies therein, especially in a certain statement dated April 26th, 1907, were inadvertent and without wrongful intent, and agrees to and does herein waive and release said Walter Russell from any claim on account of such statement or statements, and further agrees to and does hereby release Mrs. Russell, Walter Russell and any properties mentioned in said statement or statements which have been transferred by him to her, from any claim or right it has or might have to attack or otherwise question any such transfer."

The District Judge held that this contract bars the Trust Company from taking legal proceedings of any kind to the disadvantage of the bankrupt based on the financial statements made to the Trust Company and the Bradstreet Company, and the correctness of that decision is challenged by this appeal.

The appellant relies on the well-settled rule of construction that releases, though containing the broadest and most general terms, are to be limited to the particular claims which from the recitals appear to have been in the immediate contemplation of the parties. This rule is well illustrated in two of the cases cited on the brief. In Jackson v. Stackhouse, 1 Cow. (N. Y.) 122, 13 Am. Dec. 514, the document acknowledged receipt of a valuable consideration, in full of a specified judgment alleged to be for two years' interest on a specified bond, and "also in full of all debts, demands, judgments, executions and accounts of whatsoever nature to this date." It was held not to release the obligee's rights under the mortgage given to secure the bond. In Union Pac. Ry. Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581, the document acknowledged the receipt of $150 in full payment for "injuries received at McCammon on Oregon Short Line while assisting in switching a burning baggage car from main track to side track" and ended with usual form of general release of all suits, debts, dues, claims and demands. It was held not to bar an action for personal injuries resulting from malpractice of the surgeons in defendant's hospital in Denver who treated him for the injuries recited, but carelessly left a drainage tube in his leg as the wound healed and when he was

discharged. The construction of releases, however, is according to the intent of the parties as it may be gathered, if it can be gathered, from the instrument itself; and, since the language to be construed varies in the different cases, a decision in one is not always controlling of the construction in another.

Looking at the contract now before us we think it would be altogether too narrow a construction to hold that it was intended merely to save Mrs. Russell from litigation regarding the validity of certain transfers to her and to release Mr. Russell from any right of action based upon his false statements. The recitals themselves show that the Trust Company was not only to "forbear" in respect to its claim against Russell for having borrowed money upon alleged false statements; it was also to concede that any misstatements in the written statements were "inadvertent and without wrongful intent" to surrender such statements, and to "cancel" the same. The language seems well chosen to express the intention that as between Russell and the Trust Company these alleged false statements were to be completely wiped out, and the situation be as if they had never been made. This comprehensive language is not found merely in a covenant following recitals of less scope; it is in the recitals themselves, in the particular recital which undertakes to express what the Trust Company is willing to do in order to obtain $17,500 of presumably good security. There is nothing inherently improbable about such a transaction. Although it had a cause of action against Mrs. Russell to set aside a transfer and one against Russell for obtaining money on false representations, the value of these causes of action could be determined only by their trial. That there would be a vigorous defense which might make the result uncertain is manifest from the brief which the appellee has filed here. The evidence indicates that, except for the hold which it had on him by reason of the alleged false statements, the company did not expect to get much, if anything, from him in payment of his notes. How much property Mrs. Russell had does not appear, and we may fairly assume that the agreement was considered by the Trust Company to be beneficial to itself, or it would not have entered into it. It is fair also to assume that the Trust Company entered into it with full appreciation of the existing situation and of what it might become in the natural course of events with an insolvent debtor. The suggestion that it could not have been within the contemplation of the parties that Russell would go into bankruptcy is gratuitous. The counsel for the company in the interview with Russell which led up to the agreement expressly told him that they did not intend to let him go into bankruptcy until he had made good with them.

We concur, therefore, with the District Judge in the conclusion that having for a valuable consideration agreed with Russell to expunge the statements covered by the agreement the Trust Company cannot be allowed to present such statements as an objection to his discharge. Other creditors might be free to make such use of them (In re A. B. Carton [D. C.] 148 Fed. 63), but this creditor by canceling the statement has prevented itself from presenting it.

By reference to the agreement it will appear that the recitals refer

to "any statements delivered to (the Trust Company) by (Russell)" and the covenant of the Trust Company is to cancel and surrender "any statements filed with it by Walter Russell." The signed statement of January 26, 1907, was made by Russell to the Bradstreet Company, was filed with it, and was never delivered to the Trust Company or apparently seen by them before the trial. It is contended, therefore, that this statement is not within the language of the agreement. In considering this suggestion it will be useful to refer to the statute. Act July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427).

Section 14b provides for the refusal of a discharge when the bankrupt has "(3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." This provision was incorporated by amendment in 1903. Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310). Its language is precise and evidently chosen to restrict the scope of the provision, so that no loose construction might extend it beyond what Congress intended to enact when it added an objection, the like of which appears in no previous bankruptcy law. This is apparent not only from the choice of words, but also from the history of the amendment. As it left the house it contained the clause "or of being communicated to the trade"; that clause was struck out in the Senate, and the House concurred in thus restricting it. Collier on Bankruptcy (7th Ed.) p. 287. It would seem from this that the ordinary statement of financial condition made to a mercantile agency for general circulation among its inquiring subscribers would not be within the statute. Three cases are cited in appellant's brief. In Re Dresser, 146 Fed. 393, 76 C. C. A. 655, this court held that when the bankrupt had prepared a written statement, false in material facts, and delivered it to a broker whom he employed to obtain property on credit for the bankrupt, with the intent that the broker should exhibit it to the creditor, such transaction was in all respects the same as if the bankrupt had himself exhibited the statement. In Re Pincus (D. C.) 147 Fed. 623, the manager of a mercantile agency, at the request of one of its subscribers, made an inquiry of the bankrupt as to a certain loan contained in a statement which he had filed with the agency, and which the manager showed him. The bankrupt wrote a false statement upon the document, and thereafter the manager "communicated the result of this visit" to the subscriber, who thereupon extended credit to the bankrupt on the faith of the statement. Discharge was refused. In Re Carton & Co. (D. C.) 148 Fed. 63, the same judge held that "the usual commercial agency report obtained by an agency, in order that it may give the new merchant a 'rating' and for general distribution among its customers, cannot be made the basis of successful action by an objecting creditor." But that "when an agency applies to a merchant for a specially signed report on his condition he must know that such report is for the special purpose of enabling those who vend him goods to decide upon his financial responsibility." The case went off on another ground, but the court intimated that in its opinion such special reports when false were to be treated as within the statute, whether or not it was disclosed to

the bankrupt that some particular person with whom he was about to deal had asked for the information.

We do not express any opinion as to the correctness of these last two decisions; it is not necessary to do so. If the statement of January 26th which Russell gave to the reporter, sent to him by the Bradstreet Company, is to be considered as merely the usual commercial agency report filed with such agency to secure a rating, then not having been made to the Trust Company for the purpose of obtaining the property or credit, it is not within the language of the act. If, however, it be held that the circumstances were such that it should be assumed that Russell knew the Trust Company was making inquiries about him at the agency, then, when he filed a false report with the agency he gave it authority, as his agent, to repeat his statement to the Trust Company, and, although the latter company never saw the original statement the copy which was sent to it by the agency was as effective to bind the bankrupt as if he had signed it with his own hand and delivered it personally to the president of the Trust Company. But, in such event, the "materially false statement in writing" would be the one which was delivered to that company, upon which alone it relied, which was placed in its files and which upon the execution of the agreement it transferred to Mrs. Russell. Such statement, however, is covered by the agreement and may not be availed of by the Trust Company as a bar to discharge.

In the foregoing we do not mean to be understood as deciding whether or not the Commercial Trust Company had in any case any standing in court under a specification alleging that its property had been obtained through fraudulent misrepresentations, which facts, if true, would have excepted its debt under section 17 (2) from the bar of a discharge. Here we only determine that, if it had such a standing its case was not made out on the facts.

The order is affirmed.