### NOVICK v. E. P. REED & CO. et al.

(Circuit Court of Appeals, Third Circuit. December 6, 1911.)

No. 56 (1,538).

BANKRUPTCY (§ 407*)—GROUNDS FOR REFUSING DISCHARGE—"OBTAINED PROPERTY ON FALSE STATEMENT."

> A financial statement, made by a bankrupt to a mercantile agency in response to a request therefor stating that "this information is asked for and received in strict confidence for commercial use only," is not within Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as added by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310). making it a ground for refusal of a discharge if a bankrupt has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit," as respects a creditor who sold goods to the bankrupt more than a year after such statement was made, and such creditor has no standing to oppose a discharge under such provision.

> [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

Appeal ·from· the District Court of the United States for the Western District of Pennsylvania.

In the matter of Samuel Novick, bankrupt. On appeal by bankrupt from an order refusing discharge, on objections of E. P. Reed & Co. and others. Reversed.

Lowrie C. Barton (Lewis M. Alpern, Abraham Seder, and Alpern & Seder, on the brief), for appellant.

John N. Patterson, for appellees.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

LANNING, Circuit Judge. The District Court refused to discharge the bankrupt on the ground that he had, in May, 1908, violated clause 3, subd. "b," of section 14 of the bankruptcy act. At that time the clause provided that the District Judge should hear the bankrupt's application for a discharge and discharge him, unless he had "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." It appears that, on or about May 21, 1908, the Shoe & Leather Mercantile Agency applied to the bankrupt for a written statement of his financial condition, saying:

> "This information is asked for and received in strict confidence for commercial use only."

The statement was made out, was dated May 28, 1908, was received by the Mercantile Agency on June 1, 1908, and purported to show the bankrupt's condition on May 1, 1908. The appellees, creditors of the bankrupt, contended in the District Court that it was materially false, and that it was made to the Mercantile Agency as the agent of the appellees, for the purpose of obtaining on credit the property which the appellees sold to the bankrupt. The master, to whom the cause was referred in the District Court, so found, and the District Court affirmed the finding.

There is proof that some, but not all, of the objecting creditors were subscribers of the Shoe & Leather Mercantile Agency, and that some, but not all, of those subscribers received from the Mercantile Agency copies of the bankrupt's statement. Which of the objecting creditors were such subscribers, and which of them received copies of the statement, we do not know, except that E. P. Reed & Co. was one of them. Nor do the proofs show that any of the creditors, except possibly E. P. Reed & Co., relied upon the statement when the bankrupt's present debts to them were contracted. The question, therefore, is, assuming the statement to have been materially false, whether E. P. Reed & Co. have any standing to object to the bankrupt's discharge.

The section of the law under consideration was materially modified by an amendment in 1910 (Act June 25, 1910, c. 412, 36 Stat. 839). It now provides that a bankrupt shall not be discharged if he has "obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person." Collier, in commenting on the section as it stood before 1910, says that the crucial words were "such property." No such provision is to be found in any other bankruptcy law. The history of the section shows that it is not to be too liberally construed, for the clause "or of being communicated to the trade" was stricken from it in Congress. Collier on Bankruptcy (8th Ed.) 287. "It would seem from this," said the Circuit Court of Appeals of the Second Circuit in the Russell Case, 176 Fed. 253, 258, 100 C. C. A. 77, 82, "that the ordinary statement of financial condition made to a mercantile agency for general circulation among its inquiring subscribers would not be within the statute." In that case it appears that Russell, in May, 1905, had made a statement of his financial condition to a reporter of Bradstreet's Commercial Agency; that on January 12, 1907, the Commercial Trust Company, to whom Russell had applied for a loan, sought information from the Bradstreet Company as to Russell's financial condition; that the Bradstreet Company delivered to the Trust Company a copy of Russell's statement of May, 1905; and that on January 26, 1907, the Trust Company made to Russell the loan which he desired. Concerning this transaction the Circuit Court of Appeals said:

"If the statement of January 26th, which Russell gave to the reporter sent to him by the Bradstreet Company, is to be considered as merely the usual commercial agency report filed with such agency to secure a rating, then, not having been made to the Trust Company for the purpose of obtaining the property or [on] credit, it is not within the language of the act."

We agree with this construction of the law as it stood before 1910. In the case now in hand the bankrupt's statement to the Shoe & Leather Agency was made in May, 1908. The indebtedness to E. P. Reed & Co. is for merchandise sold to the bankrupt on July 6, 1909, and September 24, 1909. There is nothing to indicate that the statement of May, 1908, was made to the Mercantile Agency, as the agent either of the bankrupt or of E. P. Reed & Co. The time intervening

between the date of the bankrupt's statement and the dates of sales by E. P. Reed & Co. to the bankrupt forbids such inference. Its purpose seems rather to have been the general one of obtaining a rating by the Mercantile Agency to which it was sent. It was communicated to the Agency "in strict confidence for commercial use only." If the "commercial use" was intended to be more than the use of the statement by the Agency in fixing a rating for the bankrupt, it is difficult to understand how it could have been regarded as a statement sent "in strict confidence." On the proofs before us it is impossible to find that the case comes within the language of section 14b (3) as it stood in 1908.

In re Dresser, 146 Fed. 383, 76 C. C. A. 655, is distinguished from the present case, because there the bankrupt delivered a false written statement of the financial condition of his firm to a broker, that the broker might use it in selling commercial paper on which his firm was liable.

In re Pincus (D. C.) 147 Fed. 621, differs from this case because there the false statement to the mercantile agency was expressly declared to have been made "to form a basis for credit with the associate members" of the agency.

In Re A. B. Carton & Co. (D. C.) 148 Fed. 63, it was distinctly held that:

"The usual commercial agency report, obtained by an agency in order that it may give the new merchant a rating, and for general distribution among its customers, cannot be made the basis of successful action by an objecting creditor."

In the Augspurger Case (D. C.) 181 Fed. 174, the bankrupt delivered to a mercantile agency a written statement of his financial condition, in which he declared that the statement was designed as a basis for credit, and on which, with the other proofs before the court, it was found that the statement was false, and was knowingly made for the purpose of obtaining credit and property from the objecting creditor and any other merchant to whom the statement might be submit-
ᵗʰe mercantile agency.
ⁿ C.) )174 Fed. 867, is a case where a bankrupt vol-
ⁿˡⁱcitation from any one, sent a false statement
ⁿ express purpose of having it com-

ⁿᵒ⁴ the special master
ᵗᵉrially false,
ⁿᵉdit

"This information is asked for and received in strict confidence for commercial use only."

If there were evidence that the bankrupt furnished the statement to the agency for the purpose of having copies of it sent to its customers, a different question would be presented to us. There is no such evidence. Accordingly, we think the order of the District Court is erroneous.

The order is reversed, with costs, and the record will be remanded to the District Court, with instruction to enter a new order, overruling the specifications of objection to the bankrupt's discharge, and discharging him.