## J. W. OULD CO. v. DAVIS et al.

(Circuit Court of Appeals, Fourth Circuit.    October 2, 1917.)

### No. 1525.

1. Bankruptcy ⊛⇒407(5)—Discharge—Refusal—False Representations as to Credit.

The original Bankr. Act (Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 did not include, among the grounds for refusing discharge the obtaining of credit by false representations of solvency. The amendment of 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797) inserted a provision for refusing of discharge where the property was obtained on credit upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit. Decisions were conflicting on the question whether the provision covered general statements to commercial agencies not procured at the request of any prospective creditor or made for the purpose of obtaining credit from any particular dealer. In 1910 (Act June 25, 1910, c. 412, § 6, 36 Stat. 839 [Comp. St. 1916, § 9598]), when

the section was amended so as to declare that discharge shall be denied, where the bankrupt obtained money or property upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person, the House passed a bill which so amended the section as to make it plain that false statements to a commercial agency would bar discharge, but the Senate, as it appears from its journals, refused to concur, and offered the substitute amendment, which was accepted, the judiciary committee of the Senate specifically stating that the house bill which in effect made the obtaining of property on false written statements to mercantile agencies a ground of opposition to discharge, without the creditor, whose property has thus been obtained, first asking such mercantile agency to procure him the written statement, was not concurred in because merchants are liable to make careless general statements, and any tendency to make the bankruptcy act unduly harsh should be avoided. *Held* that, under the section as amended, a discharge could not be denied because of the bankrupts' false general statement made to a commercial agency, not in response to the request of a prospective creditor, or made for the purpose of obtaining credit from any particular dealer, notwithstanding the printed form used by the agent who obtained the statement recited it was made as a basis of credit, and credit was extended in reliance thereon by a creditor who, before extending credit, asked the agency for a report on the bankrupts.

2. STATUTES ☞217—BANKRUPTCY ACT—CONSTRUCTION—AMBIGUITY.

Bankr. Act, § 14b(3), providing that a discharge shall be denied where the bankrupt obtained money or property upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person, does not so clearly declare that a discharge shall be denied on account of a false general statement made to a commercial agency not made in response to any inquiry as to the bankrupt's financial condition by a particular creditor or with intent to obtain credit from any particular creditor, that recourse to the journals of Congress showing the intent of the Legislature in enacting the amendment of 1910, which embraced such subdivision, cannot be had to ascertain the legislative intent.

Appeal from the District Court of the United States for the Western District of Virginia, at Danville; Henry Clay McDowell, Judge.

In the matter of the bankruptcy of R. E. Davis and C. W. Davis, partners trading as Davis & Davis. The J. W. Ould Company filed objections to the bankrupts' application for a discharge, and from an order granting the application, it appeals. Affirmed.

Amonette & Bailey, of Lynchburg, Va., for appellant.

Whittle & Whittle, of Martinsville, Va., for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The court below granted the bankrupts' application for a discharge, and the objecting creditor appeals. These facts appear: In January, 1915, a representative of R. G. Dun & Co., the well-known commercial agency, called upon the bankrupts at their place of business in Martinsville, Va., and obtained from R. E. Davis, senior member of the firm, a statement of assets and liabilities according to an inventory taken on the 6th of that month. The referee finds that this statement "was made, signed, and delivered by that firm as a basis of credit." In the following April, some three months later, a traveling salesman of appellant, wholesale dealer in

dry goods and notions at Lynchburg, Va., sent in an order of the bankrupts for about $150 worth of merchandise. Doubtful about giving them credit, for they had become "slow," and the salesman had been instructed not to solicit their trade, the credit manager of appellant applied to Dun & Co. for a report on the firm, and was furnished with a copy of their statement to the agency in the previous January. Relying upon this statement, which showed abundant solvency, the order received from the salesman was filled. The goods were not paid for, and in November of that year the concern was adjudicated bankrupt.

In dealing with the case thus outlined it will be assumed that the statement in question, if made directly to appellant for the purpose of getting property on credit, would bar a discharge because of its material falsity. But the statement was not made to appellant, nor was it procured at the request or with the knowledge of appellant or any other creditor. Neither was it made with any apparent purpose of getting goods on credit from appellant or from any particular dealer. Indeed, the finding that it was made "as a basis of credit" rests upon nothing that occurred at the time it was obtained, but only on a recital to that effect in the printed form used by the agent who got the statement, and such inference as may be drawn from the fact that Davis presumably knew the nature of the business carried on by Dun & Co. In short, the record presents the typical case of a statement of financial condition made to a commercial agency, not procured at the request of any prospective creditor, or made for the purpose of obtaining credit from any particular dealer, but which statement is afterwards communicated by the agency to an inquiring subscriber, who in reliance thereon gives credit to the person making the same. If a statement so made be materially false, will it serve to prevent a discharge?

[1] The original bankruptcy law of 1898 (section 14b) did not include among the grounds for refusing discharge the obtaining of credit by false representations of solvency. Such a provision was inserted in 1903 in the following language:

"Or (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit."

Whether this provision covered general statements to commercial agencies, like the one under review, became the subject of dispute, and the decisions were conflicting. In re Kyte (D. C.) 174 Fed. 867; In re Russell, 176 Fed. 253, 100 C. C. A. 77; In re Augspurger (D. C.) 181 Fed. 174; In re Foster (D. C.) 186 Fed. 254. When the law was up for amendment in 1910, the question of allowing false statements to a commercial agency to be available for opposing discharge was specifically considered by the Congress, with full knowledge of the conflict of judicial opinion respecting the 1903 provision. The House passed a bill which so amended section 14b (3) as to make it plain that false statements to a commercial agency, like the one in question, would bar a discharge. 61st Congress, 1st and 2d Sessions, 1909–10, House Rep. vol. 1, Miscellaneous. But the Senate did not concur.

On the contrary, its judiciary committee, in reporting the bill to the Senate, said:

"The third change made by the house bill, that which in effect made the obtaining of property on false written statements to mercantile agencies ground of opposition to discharge, without the creditor whose property has thus been obtained first asking such mercantile agencies to procure him the written statement, is not concurred in by your committee. Any tendency to make the bankrupt act unduly harsh is to be avoided. It is a sufficient ground of opposition to discharge that the bankrupt has obtained property from a creditor by a materially false statement in writing where that statement was specifically asked for by the creditor or by the creditor's representative. General statements to mercantile agencies, not specifically asked for by prospective creditors, ought not to be ground of opposition to discharge; it makes the provision too harsh, in the estimation of your committee. Merchants are likely to make careless general statements where they would be very careful were they making statements to creditors from whom they were at the time asking credit. Your committee proposes a substitute for the house amendment of this ground of opposition to discharge, which is thought to go as far as is proper."

Upon this report the proposed substitute was adopted by the Senate and afterwards concurred in by the House, and thus became the present law, as follows:

"(3) Obtained money or property upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person."

[2] In the light of this legislative history it seems clear, as the Second Circuit Court of Appeals held in the Zoffer Case, 211 Fed. 936, 128 C. C. A. 434, that the amendment of 1910 cannot be construed to cover "general statements to mercantile agencies, not specifically asked for by prospective creditors." Indeed, counsel for appellant frankly concede that the Davises are entitled to a discharge, "if the courts enforce the intention expressed in the words of the committee reports instead of the intention expressed in the words" of the bankruptcy act. The real contention, therefore, is that the language of the amendment is of such plain and unmistakable import that we may not look elsewhere to ascertain its meaning. Caminetti v. United States, 242 U. S. 470, 485, 37 Sup. Ct. 192, 61 L. Ed. 442, Ann. Cas. 1917B, 1168. But do the words themselves disclose a legislative intent so manifest and certain as to preclude resort to any extrinsic aid to their interpretation? We think not. Whom did the Congress intend to include in the phrase, "or his representative"? When and under what circumstances may a creditor claim the benefit of information obtained by a third party? What relationship must there be to make such third party the agent of the creditor? If a mercantile agency, acting on its own initiative and not at the request or even with the knowledge of any subscriber, obtains from a trader a written statement of his financial condition which is materially false, and afterwards furnishes such statement to a dealer who extends credit on the faith of it, is that agency the "representative" of the creditor within the meaning of the amendment? And can it be said ordinarily that a statement so obtained, not at the instance of the person who gives the credit or with his knowledge, is nevertheless made "for the purpose of obtaining credit from such person"?

These and other questions which at once arise under the facts here considered are quite sufficient, in our judgment, to show a degree of ambiguity in the amendment of 1910, which justifies resort for its interpretation to the official proceedings above recited. From these proceedings, to which we are amply warranted in referring, it is evident that the Congress did not intend to make "general statements to mercantile agencies not specifically asked for by prospective creditors" available grounds for opposing a bankrupt's discharge. The language of the enactment is in no wise inconsistent with the declared intent of the lawmaking body, and that intent should control its construction.

Affirmed.